UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PAUL AARON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 20-cv-11604-ADB |
| | * | |
| CITY OF LOWELL, et al., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiff Paul Aaron ("Plaintiff") initiated this action by filing a *pro se*, civil rights complaint seeking damages for, among other things, the alleged violation his constitutional rights during his 2018 arrest and subsequent prosecution. In response to a Court order, Plaintiff filed a second amended complaint naming as defendants the City of Lowell ("City"), five Lowell police officers and an individual now identified as a DEA Task Force member.

Now before the Court are Defendants Nickolas Dokos ("Dokos"), David Lavoie ("Lavoie"), and Rafael Rivera's ("Rivera") second motion [ECF No. 65] to dismiss; the City's second motion [ECF No. 77] to dismiss; Defendants David Desmarais ("Desmarais") and Mathew Penrose's ("Penrose") motion [ECF No. 87] to dismiss; and Defendant Francisco Vicente's ("Vicente") motion [ECF No. 89] to dismiss.

In addition, counsel for Plaintiff entered a notice of appearance and moved [ECF No. 91] for leave to file a third amended complaint. Plaintiff's counsel also opposed all four motions to dismiss, see [ECF Nos. 85, 93] and the City opposed Plaintiff's motion for leave to file a third amended complaint [ECF No. 95].

For the reasons set forth below, the City's motion to dismiss, [ECF No. 77] is granted, the remaining Defendants' motions, [ECF Nos. 65, 87, 89] are denied and Plaintiff's motion for leave to amend, [ECF No. 91], is granted.

## I.      RELEVANT BACKGROUND

Plaintiff initiated this *pro se* action on August 27, 2020, while in custody at FCI-Danbury in Connecticut. [ECF No. 1]. On September 16, 2020, he filed an amended complaint and on February 5, 2021, the Court granted Plaintiff leave to proceed *in forma pauperis* and to file a second amended complaint which he filed on March 8, 2021. [ECF Nos. 4, 14, 18].

By Memorandum and Order dated May 4, 2021, the Court directed the clerk to issue summonses for the City and the individual defendants (Vicente, Rivera, Desmarais, Penrose, Dokos, and Lavoie.) [ECF No. 19]. The Court stated that a summons would not issue for the John Doe defendant and that Plaintiff could amend to substitute the correct party once his true name was discovered. [Id.] The Court granted Plaintiff permission to elect to have service made by the United States Marshals Service (USMS) within 90 days of the issuance of the summons. [Id.]

Accordingly, on May 4, 2021, almost nine months after Plaintiff initiated this action, the clerk issued summonses for service of the named defendants by the USMS. [ECF No. 21]. After Plaintiff completed service of process forms for the USMS, dated July 30, 2021, a Deputy United States Marshal ("DUSM") served Rivera, Penrose, Dokos, Desmarais, Lavoie, and the City on August 13, 2021. [ECF Nos. 23-28]. As to the individual defendants, the DUSM checked a box on the Process Receipt and Return ("receipt") indicating that he had personally served someone named "Officer Colon" with the summonses for them. [ECF Nos. 23-27]. For the City, the DUSM checked a box on the receipt indicating that Clerk Michael Geary had been served. [ECF

No. 28]. The USMS filed these receipts with the Court on September 2, 2021. [ECF Nos. 23-27]. Finally, with regard to Vicente, a receipt was filed by the USMS indicating that Lt. Bryan Trask was served at the New Hampshire State Police Barracks in Concord, New Hampshire on August 23, 2021. [ECF No. 38].

The seven defendants subsequently filed motions to dismiss for improper service. [ECF Nos. 31, 45, 49, 53]. By Memorandum and Order dated March 3, 2022, the Court recognized that although Plaintiff submitted his request to the USMS within the 90-day time period allowed by the court in its May 4, 2021 Memorandum and Order, the DUSM failed to effectuate service within that time period. [ECF No 57]. The Court therefore granted in part the defendants' motions to dismiss, but also afforded Plaintiff additional time to accomplish service on the defendants.[1]

On June 21, 2022, Plaintiff filed notice through counsel of intent to amend his complaint a third time, [ECF No. 86], and opposed the two then second motions to dismiss filed by the City, Dokos, Lavoie, and Rivera, [ECF No. 85]. The notice states, among other things, that recently retained counsel planned to submit a third amended complaint on or before June 30, 2022, [ECF No. 86]. The following day, on June 22, 2022, Defendants Desmarais, Penrose and

---

[1] "[T]he First Circuit has held that a *pro se* plaintiff proceeding *in forma pauperis* shows good cause when the Marshals fail to meet their obligations." *Boyd v. Rue*, Civil Action No. 09-10588-MLW, 2010 WL 3824106, at *1 (D. Mass. Sept. 27, 2010) (emphasis omitted). "So long as a plaintiff 'provides the information necessary to identify the defendant, courts have uniformly held that the Marshals' failure to effect service automatically constitutes good cause within the meaning of Rule 4(m)." *Id.* (quoting *Ruddock v. Reno*, 104 F. App'x 204, 206-07 (2d Cir. 2004) (unpublished)). In fact, the Advisory Committee specifically notes that reliance on a marshal to make service is an exceptional circumstance where a court would be justified in granting an extension even without a showing of good cause. *Evans v. Staples, Inc.,* No. 18-40104-TSH, 375 F.Supp.3d 117, 122 (D. Mass. 2019) (citing Fed. R. Civ. P. 4(m) advisory committee's note to 2015 amendment ("Shortening the presumptive time for service will increase the frequency of occasions to extend time. More time may be needed, for example, when ... a marshal is to make service in an in forma pauperis action.")). See 03/03/2022 Memo & Order, ECF No. 57.

Vicente filed motions to dismiss with supporting memoranda. [ECF Nos. 87 – 90]. On June 30, 2022, Plaintiff filed his motion for leave to amend accompanied by an amended complaint, [ECF Nos. 91, 92], and on July 4, 2022, he opposed the motions to dismiss filed by Defendants Desmarais, Penrose and Vicente, [ECF No. 93].

The City opposes Plaintiff's motion to amend, [ECF No. 95], arguing unfair prejudice, failure to file a memorandum in support as required by L.R. 7.1(b)(1) and that Plaintiff's proposed amended complaint, like the earlier complaints, would be subject to dismissal for failure to state a claim against the City.

## II.    DISCUSSION

### A.    42 U.S.C. § 1983 Count Against the City of Lowell

The City argues that Plaintiff's § 1983 claim against it must be dismissed because he has failed to state a claim for municipal liability. [ECF No. 77].

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory," but § 1983 does impose "liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978). "The alleged municipal action at issue must constitute a 'policy or custom' attributable to the City." Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005). The actions of individual law enforcement officers are insufficient to establish the existence of an official policy. See Welch v. Ciampa, 542 F.3d 927, 942 (1st Cir. 2008) ("[L]iability may not be imposed on a municipality for a single instance of misconduct by an official lacking final policymaking authority." (citing Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985))). Here, Plaintiff grounds his municipal liability claim on the execution of a municipal custom, see Pembaur v. City of Cincinnati, 475 U.S. 469, 481 n.10 (1986), alleging

4

that the City had a custom of inadequately training its police department, specifically in preparing accurate reports.  [SAC at 18; TAC ¶ 88–93].

There are two requirements to prove a § 1983 claim based on a municipal custom.  First, the custom "must be attributable to the municipality" such that it is "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice."  Whitfield v. Melendez-Rivera, 431 F.3d 1, 13 (1st Cir. 2005) (quoting Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989) ).  "Second, the custom must have been the cause of and 'the moving force behind' the constitutional violation."  Id. (quoting Bordanaro, 871 F.2d at 1156).

A municipality's failure to train its employees can be an actionable custom under § 1983, see City of Canton v. Harris, 489 U.S. 378, 388–90 (1989), but "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train[,]" Connick v. Thompson, 563 U.S. 51, 61, and "[t]riggering municipal liability on a claim of failure to train requires a showing that municipal decisionmakers either knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies[,]" Haley v. City of Bos., 657 F.3d 39, 52 (1st Cir. 2011) (citations omitted).

In the instant case, Plaintiff has not pleaded any facts that suggest municipal decisionmakers either knew or should have known that the training of officers was inadequate, or that the City's failure to train led to the asserted constitutional deprivation.

First, Plaintiff has not adequately pled the requisite pattern of conduct required to establish a custom.  A single alleged incident of a constitutional deprivation "is insufficient, in and of itself, to establish a municipal 'custom or usage' within the meaning of Monell."  Mahan

v. Plymouth Cty. House of Corr., 64 F.3d 14, 16–17 (1st Cir. 1995).  Evidence of "multiple incidents of misconduct" that suggest a "systemic pattern of activity[]," however, may support an inference of a municipal custom.  See Town of Wayland, 179 F. Supp. 3d at 172–73 (citing Kibbe v. City of Springfield, 777 F.2d 801 (1985); Baron v. Suffolk Cty. Sheriff's Dep't, 402 F.3d 225 (2005).  Plaintiff's claim against the City relies largely on the actions of the individual Defendants involved with his case.  The only additional facts Plaintiff offers, in an attempt to suggest a pattern, are the facts that Defendants' supervisor in this case did not subsequently condemn the manner in which the Defendants in this case prepared the report, [SAC at 18; ECF No. 85 at 7], and that certain Defendants in this case had previous misconduct allegations against them, [ECF No. 85 at 2].  Neither fact, however, is sufficient to support a "system pattern of activity," especially where Plaintiff has not represented that the previous misconduct allegations involved the fraudulent preparation of reports, and he has not otherwise alleged a connection between these incidents or tied them to the purported failure to train.

Instead, Plaintiff suggests that the fact of the violation alone is enough to surmise a failure to train on the part of the City, [SAC at 18], but allowing for such inference would moot the pleading requirements of a Monell claim.  See Doe1 v. Bos. Pub. Sch., No. 17-cv-11653, 2018 WL 3336535, at *5 (D. Mass. 2018).  Without more than just conclusory allegations about a City custom, the Court cannot reasonably infer that the City (1) knew or should have known that its training for officers in this regard was deficient, (2) was deliberately indifferent towards that deficiency, and (3) that this indifference caused the fraudulent preparation of reports by the individual Defendants involved in Plaintiff's case.

Perhaps acknowledging the thin support for the existence of a pattern, Plaintiff seems to argue in his opposition to the City's motion that this case falls into the "narrow range of

circumstances" hypothesized by the Supreme Court in Canton that allow for the inference of a municipal custom based on single incidents, [ECF No. 85 at 3–4], but Plaintiff has not explained how failure to adequately train officers on the preparation of reports falls within this narrow range, nor has he identified any case that has extended Canton in such a manner. Cf. Cosenza v. City of Worcester, Massachusetts, No. 18-cv-10936, 2021 WL 5138493, at *9 (D. Mass. Nov. 4, 2021) (declining to extend Canton's hypothetical "single-incident" municipality liability to a claim asserting a failure to train officers on how to conduct photo arrays).

Accordingly, the City's motion to dismiss, [ECF No. 77], is GRANTED.

### B. Defendants Desmarais and Penrose's Motion to Dismiss for Insufficient Service

Defendants Desmarais and Penrose contend that service was improper because the summonses and SAC were left with Officer DeAngelo at the Lowell Police Station. As noted in the Court's March 3, 2022 Memorandum and Order, [ECF No. 57] and above, the USMS' failure to effectuate service within the 90-day time period ordered by the Court constitutes good cause within the meaning of Rule 4(m), and, therefore, the Court will afford Plaintiff additional time to accomplish service on these defendants. Accordingly, Desmarais and Penrose's motion [ECF No. 87] to dismiss for insufficient service is DENIED.

### C. Defendants Dokos, Lavoie and Rivera Move to Dismiss this Action as Time Barred

Defendants Dokos, Lavoie and Rivera no longer challenge service, but now argue, among other things, that Plaintiff's § 1983 claims against them must be dismissed as time barred because he filed this action one day late. [ECF Nos. 65, 66]. For the reasons that follow, Defendants have failed to demonstrate that Plaintiff's claims are time barred.

Section 1983, which provides a "private right of action for violations of federally protected rights," contains no specific statute of limitations. Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 69 (1st Cir. 2005). Courts therefore borrow the most appropriate state statute of limitations, typically a general personal injury statute, as long as the statute is not inconsistent with federal law or policy. See Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003); accord Wilson v. Garcia, 471 U.S. 261, 280 (1985) (section 1983 action ordinarily characterized as personal injury action for limitation purposes).

In Massachusetts, the statute of limitations for personal injuries is three years from the date the cause of action accrues. Mass. Gen. L. ch. 260, § 2A. Section 2A states that the "action shall be commenced only within three years next after the cause of action accrues." Ordinarily, to commence an action means to file a complaint with the court. See Fed. R. Civ. P. 3; McIntosh v. Antonino, 71 F.3d 29, 36 (1st Cir. 1995). Where appropriate, however, the mailbox rule applies to incarcerated *pro se* plaintiffs. See Houston v. Lack, 487 U.S. 266, 275 (1988); Casanova v. Dubois, 304 F.3d 75, 79 (1st Cir. 2002). Under the mailbox rule, "the filing date for purposes of assessing compliance with the statute of limitations will be the date on which the prisoner commits the mail to the custody of prison authorities." Id., 304 F.3d at 79. The original complaint is dated August 21, 2020.[2] This court assumes that Plaintiff placed his complaint in FCI Danbury's internal mail system on August 21, 2020, the date of the complaint's certificate of service. Torres v. Irvin, 33 F. Supp. 2d 257, 270 (S.D.N.Y. 1998) ("[a]bsent evidence to the contrary, the court assumes that [the prisoner] gave his petition to prison officials for mailing on the date he signed it").

---

[2] The certificate of service states that Plaintiff mailed the complaint on August 21, 2020. See [ECF No. 1 at p. 4].

Thus, the filing date for purposes of the statute of limitations for the original complaint is August 21, 2020. Using the date of the certificate of service for the complaint (August 21, 2020), under the mailbox rule, Aaron filed his complaint before the expiration of the three-year limitation period.

Accordingly, Defendants Dokos, Lavoie and Rivera's motion [ECF No. 65] to dismiss the complaint as time-barred is DENIED.

### D. Plaintiff will be Permitted to File his Third Amended Complaint

Federal Rule of Civil Procedure Rule 15 allows courts to "freely give leave [to amend] when justice so requires." However, "'parties seeking the benefit of ... [Rule 15(a)'s] liberality [must] exercise due diligence; unseemly delay, in combination with other factors, may warrant denial of a suggested amendment.'" Walton v. Nalco Chem. Co., 272 F.3d 13, 19 (1st Cir. 2001) (quoting Quaker State Oil Ref. Corp. v. Garrity Oil Co., Inc. 844 F.2d 1510, 1517 (1st Cir. 1989)). Where, as here, the Plaintiff has been proceeding *pro se*, courts "endeavor, within reasonable limits, to guard against the loss of *pro se* claims due to technical defects." Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 20 (1st Cir. 2004). The proposed counseled third amended complaint, [ECF No. 92], names the same defendants and pleads the same nine counts as the earlier operative *pro se* complaint. In the motion, Plaintiff states that the instant action was initiated while he "was in the custody of the government [and that Plaintiff] did the best he could under the circumstances to file a well pled complaint after struggling to find legal representation while he was incarcerated." [ECF No. 91]. Plaintiff further states that the "[Third] Amended Complaint seeks to better organize the facts pled in [the earlier *pro se* complaint]." [*Id.*].

The only Defendant to oppose the motion to amend is the City. [ECF no. 95]. Given that the City is being dismissed, the lack of formal objection to an amended complaint by the

remaining Defendants and the benefits of working with a clearer complaint, the Court grants the motion to amend. In its opposition, the City notes that Plaintiff failed to file an accompanying memorandum of law in support of his motion to amend the complaint as required by this Court's local rules. The Court will not deny the motion on this basis, but cautions counsel that the Local Rules should be followed going forward.

### E. The Remaining Motions to Dismiss Will Be Denied as Moot

Without deciding whether the factual allegations in Plaintiff's Third Amended Complaint fail to state a claim upon which relief can be granted or whether the Defendants are entitled to qualified immunity, the Court finds that it would be most efficient to DENY the remaining portions of the pending motions as moot and allow any defendant to refile a motion in response to the Third Amended Complaint.

### III.  CONCLUSION

Accordingly:

1. The Court <u>DENIES</u> Defendants Dokos, Lavoie and Rivera's second Motion [ECF No. 65] to dismiss this action as untimely; and <u>DENIES AS MOOT</u> the remainder of the motion with leave to renew;

2. Defendant City's second Motion to Dismiss [ECF No. 77] is <u>GRANTED</u>;

3. Defendants Desmarais and Penrose's Motion to Dismiss [ECF No. 87] is <u>DENIED</u> as to insufficient process and otherwise <u>DENIED AS MOOT</u> with leave to renew;

4. Defendant Vicente's Motion to Dismiss [ECF No. 89] is <u>DENIED AS MOOT</u> with leave to renew;

5. Plaintiff's Motion for Leave to File an Amended Complaint [ECF No. 91] is <u>GRANTED</u>.

6.     The Clerk shall re-issue summonses for service of (1) Daniel Desmarais and (2) Matthew Penrose; and the Plaintiff shall serve the summons, the Third Amended Complaint, and this Order in accordance with Rule 4 of the Federal Rules of Civil Procedure.  Because Plaintiff is proceeding *in forma pauperis*, he may elect to have the USMS complete service with all costs of service to be advanced by the United States.  If so asked by the Plaintiff, the USMS shall serve copies of the summons, Third Amended Complaint, and this Order upon defendants as directed by plaintiff.  The Plaintiff is responsible for providing the USMS all copies for service and for completing a USM-285 form for each party to be served.

7.     The Clerk shall provide Plaintiff with forms and instructions for service by the USMS.

8.     The Plaintiff shall have 90 days from the date of the reissuance of the summons to complete service on Defendants Desmarais and Penrose.

**SO ORDERED.**

July 26, 2022                                                                       /s/ Alliston D. Burroughs
                                                                                              ALLISON D. BURROUGHS
                                                                                              U.S. DISTRICT JUDGE