UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                          | * |                               |
|--------------------------|---|-------------------------------|
|                          | * |                               |
| PAUL AARON,              | * |                               |
|                          | * |                               |
| Plaintiff,               | * |                               |
|                          | * | Civil Action No. 20-cv-11604-ADB |
| v.                       | * |                               |
|                          | * |                               |
| CITY OF LOWELL et al.,   | * |                               |
|                          | * |                               |
| Defendants.              | * |                               |
|                          | * |                               |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Paul Aaron ("Plaintiff") brings constitutional and state tort claims against a Drug

Enforcement Agency ("DEA") Task Force member, Francisco Vicente ("Defendant Vicente"),

and Lowell police officers, Nickolas Dokos, David Lavoie, Rafael Rivera, Daniel Desmarais,

and Matthew Penrose ("Defendants Dokos, Lavoie, Rivera, Desmarais, and Penrose" or "Lowell

Defendants") (collectively, "Defendants"),[1] related to his March 2018 arrest, the search of his

---

[1] Plaintiff also brought claims against the City of Lowell and a John Doe Defendant.  The Court previously dismissed all of Plaintiff's claims against the City of Lowell, which includes Plaintiff's official-capacity claims against the Lowell Defendants, as those claims lie against the City.  See [ECF No. 77 (City of Lowell's motion to dismiss Plaintiff's second amended complaint in its entirety, for failure to state a claim); ECF No. 96 (order granting City of Lowell's motion)]; see also Feinman v. Nicolaci, No. 03-cv-12301, 2005 WL 6719812, at *8 (D. Mass. May 5, 2005) (explaining that "claims against the police officers in their official capacity are treated as claims against the city requiring existence of 'municipal custom or policy of deliberate indifference to the commission of constitutional violations by police officers' and causal connection" (quoting Strahan v. Frazier, 156 F. Supp. 2d 80, 100 (D. Mass. 2001), aff'd, 62 F. App'x 359 (1st Cir. 2003))).  The Court also declined to issue summons to the John Doe Defendant and stated that Plaintiff could move to amend his complaint to substitute the correct party if his true name was discovered.  See [ECF No. 19].

apartment, and the subsequent state prosecution.  See [ECF No. 92 (Third Amended Complaint) ("TAC")].  Presently before the Court are three motions to dismiss the TAC, filed by Defendant Vicente, Defendants Dokos, Lavoie, and Rivera, and Defendants Desmarais and Penrose.  [ECF Nos. 99, 101, 108].  For the reasons that follow, Defendants' motions are GRANTED in part and DENIED in part.

## I.       BACKGROUND

### A.       Factual Background

The following relevant facts are taken from Plaintiff's TAC, which the Court assumes to be true when considering a motion to dismiss.  Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

#### i.       The March 7, 2018 Arrest and Detention

On or before March 7, 2018, a joint federal and state task force investigating drug distribution in Northern Massachusetts and New Hampshire received a tip that a target of their investigation would be traveling to Lowell.  [TAC ¶¶ 1–2].  The task force sought assistance from the Lowell Police Department to "to surveil the transaction."  [Id. ¶ 3].  On March 7, 2018, officers, including Defendants Vicente and detectives from the Lowell Police Department's Special Investigations Section ("SIS"), surveilled the target of the investigation in Lowell.  [Id. ¶¶ 1, 3, 17].  During this surveillance, the officers witnessed Plaintiff cross a street to a taxi driven by their target, carrying a plastic bag.  [Id. ¶¶ 4, 23].  After walking away from the taxi, still carrying the bag, Plaintiff was approached by Defendant Vicente.  [Id. ¶ 25].  Plaintiff immediately dropped the bag he was carrying, and Defendant Vicente "slammed [him] into the pavement[.]"  [Id.].  More officers then "piled on top of the Plaintiff."  [Id.].  Other officers,

including possibly Defendants Rivera, Dokos, and Lavoie,[2] witnessed Plaintiff being slammed to the ground.  [Id. ¶¶ 78, 96].

As a result of being slammed into the pavement by Defendant Vicente, Plaintiff suffered "extensive injuries[.]"  [TAC ¶ 76].  Plaintiff did not "resist arrest" or "attempt to enter any buildings."  [Id. ¶ 26].  This all occurred in front of 177 Merrimack Street in Lowell, Massachusetts and was captured on a surveillance video.  [Id. ¶¶ 6–7, 27].

The officers placed Plaintiff under arrest.  [TAC ¶ 4].  The officers did not have an arrest warrant but "acted based on their 'observations[,]'" "believing" they had witnessed Plaintiff "meeting with a distributor in a taxi."  [Id.].

Plaintiff told Defendants (though he does not identify which Defendants) "that he was injured and in need of immediate medical care for his back, hip, and leg."  [TAC ¶ 97].  "Defendants" left Plaintiff "in [a] holding cell for several days" and did not summon medical care.  [Id. ¶ 98].  Plaintiff experienced "severe pain and suffering[,]" including anxiety, panic attacks, and emotional distress, as a result of Defendants' conduct.  [Id. ¶¶ 100, 105–06, 110].

   ii.  <u>The Arrest Report and Search Warrant Affidavit</u>

Following the arrest, Defendants Vicente, Dokos, and Rivera returned to the Lowell Police station to prepare reports on the arrest.  [TAC ¶ 5].  A report on the arrest was eventually submitted under Defendant Rivera's name (the "Arrest Report").  [Id. ¶¶ 7, 14].[3]  The Arrest

---

[2] Plaintiff alternatively asserts that the combination of Defendants who saw Defendant Vicente slam him to the ground were Defendants Rivera and Lavoie, see [TAC ¶ 78], or Defendants Dokos and Rivera, [id. ¶ 96].  As discussed further below, the TAC also states that Defendant Rivera had little to no personal knowledge of the events of the arrest and Defendant Dokos was around the corner while the arrest was taking place.  See [id. ¶¶ 33, 37].

[3] None of the parties have attached to their pleadings the Arrest Report, the surveillance video, or other documents Plaintiff references in his TAC, or directed the Court to their location in the public record.  On a motion to dismiss, courts "may properly consider the relevant entirety of a

Report misconstrues details of the arrest, as evidenced by the surveillance video.  [Id. ¶ 7].  For example, the Arrest Report states that Plaintiff was *not* holding a plastic bag when he walked across the street to the taxi, while the video confirms that he was.  [Id. ¶¶ 14, 23].  It further states that Defendant Vicente approached and eventually arrested Plaintiff in front of 193 Merrimack Street, which is Plaintiff's apartment building.  [Id. ¶¶ 17, 27].  The video, however, shows that these events actually occurred in front of 177 Merrimack Street, which is nearly 80 feet away.  [Id. ¶¶ 17, 27].  The Arrest Report also says that Plaintiff "resisted arrest and tried to flee" into 193 Merrimack Street, which Plaintiff did not do, and which the video does not show.  [Id. ¶¶ 17–18, 26].  The fact that Defendant Rivera, and possibly Defendants Lavoie and Dokos, had observed Defendant Vicente "slam the Plaintiff into the pavement" was not included in the Arrest Report.  [Id. ¶¶ 78, 96].

Although the Arrest Report was submitted by Defendant Rivera, it was written by Defendant Lavoie.  [TAC ¶¶ 30–31].  Plaintiff avers that "Defendant Rivera, Defendant Lavoie, and Defendant Vicente decided that the report should be submitted under Defendant Rivera's name," rather than Defendant Lavoie's, to avoid revealing that Defendant Lavoie was a member of the DEA task force.  [Id. ¶ 31].  Defendant Rivera had "little background information about the night's events" and the Arrest Report was misleadingly written to suggest that Defendant Rivera had "personal knowledge of the events[,]" and specifically a "clear view and memory of

---

document integral to or explicitly relied upon in the complaint, even though not attached to the complaint[,]" Clorox Co. P. R. v. Proctor & Gamble Com. Co., 228 F.3d 24, 32 (1st Cir. 2000) (internal citation and quotation marks omitted), and "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."  Id. (citation and internal quotation marks omitted).  But, where as here, documents are not attached to any pleadings or otherwise publicly available, the Court will not consider them, and assumes the truth of Plaintiff's allegations related to them, as it does all the allegations in Plaintiff's complaint.  See Ruivo, 766 F.3d at 90.

the details of . . . Plaintiff's arrest." [Id. ¶¶ 33, 39].  Defendants Desmarais and Penrose signed off on the Arrest Report.  [Id. ¶ 34].

Defendant Dokos "cut and pasted" the false information from the Arrest Report into an affidavit ("Affidavit" or "Search Warrant Affidavit") that he submitted to the Lowell District Court to secure a warrant to search Plaintiff's apartment, located at 193 Merrimack Steet ("Search Warrant").  [TAC ¶¶ 20, 35–36, 67–68].  Defendant Dokos included the false information that Plaintiff attempted to enter 193 Merrimack in the Affidavit to connect Plaintiff to that residence.  [Id. ¶¶ 17–18, 21].  The Affidavit gave the "false impression" that Defendant Dokos personally witnessed Plaintiff's arrest and the events leading up to it, "even though he was around the corner at the time that it happened."  [Id. ¶ 37].

Defendant Vicente, Dokos, and Lavoie obtained a Search Warrant based on the Affidavit. See [TAC ¶¶ 20, 35, 68, 71].  A search of Plaintiff's apartment was apparently conducted based on the Search Warrant.  See [id. ¶¶ 67, 71].

Plaintiff asserts that Defendants Vicente, Dokos, Lavoie, and Rivera "intentionally hid information from the Court in their arrest reports and search warrant application."  [TAC ¶ 32]. When Defendant Lavoie was made aware of the inconsistencies between the Arrest Report and the surveillance video, he stated he might have received incorrect information from Defendant Vicente.  [Id. ¶ 38].

       iii.        State Criminal Charges

The state brought criminal charges against Plaintiff, which were ultimately dismissed.

[TAC ¶ 83].

    iv.    <u>Federal Court Testimony</u>

Federal criminal charges were also brought against Plaintiff.  <u>See</u> [TAC ¶¶ 8, 42].[4]  In October 2018, Defendant Vicente testified at a hearing in federal court about the events leading up to Plaintiff's arrest.  [<u>Id.</u> ¶ 8].  Defendant Vicente falsely testified that he did not observe Plaintiff carrying a bag when he crossed the street to the taxi, and that, while arresting Plaintiff, "'he slipped,'" which "caus[ed] he and the Plaintiff to fall to the ground." [<u>Id.</u> ¶¶ 24, 73–74].[5] Defendants Dokos and Rivera were planning to testify after Vicente, but declined to do so after learning that the surveillance video would contradict the Arrest Report and Search Warrant Affidavit.  [<u>Id.</u> ¶¶ 9–12].

    v.    <u>Board of Inquiry Investigation</u>

The Board of Inquiry (the "Board"), presumably of the Lowell Police Department, conducted an investigation into the Arrest Report and Search Warrant Affidavit.  [TAC ¶¶ 28–29].  The Board concluded that both the Arrest Report and Affidavit were "inaccurate to a level that is far beyond simple mistakes."  [<u>Id.</u> ¶¶ 28, 49].  The Board found that Defendant Rivera had not written the Arrest Report, but nevertheless allowed it to be submitted under his name.  [<u>Id.</u> ¶¶ 29, 47].  The Board also concluded that Defendant Lavoie wrote the Arrest Report, and that the Arrest Report included "inaccurate information."  [<u>Id.</u> ¶¶ 42–43].  The evidence before the Board did not support that Defendant Lavoie intentionally included false information in the Arrest Report, because Defendant Vicente declined to be interviewed for the investigation.  [<u>Id.</u> ¶ 44].

---

[4] <u>See also</u> [ECF No. 100 at 1 (noting that Plaintiff is currently incarcerated at Federal Correction Institution, Danbury)].

[5] Defendant Vicente concedes that the surveillance video may contradict his testimony, but disputes that he knowingly provided false information.  [ECF No. 100 at 5].

Plaintiff asserts that if Defendant Vicente had agreed to be interviewed for the investigation, the Board "would have concluded that Defendant Lavoie intentionally included false information in his report." [Id. ¶ 45]. Additionally, the Board found that Defendant Dokos had used portions of the Arrest Report in the Search Warrant Affidavit but was "unaware [those portions] contained incorrect information." [Id. ¶ 49].

Defendant Penrose, as "Officer in Charge" of the SIS Unit when the Arrest Report was submitted, was found to have failed to "properly supervise his subordinates." [TAC ¶ 53]. The Board further found that Defendant Desmarais "did not review the [Search Warrant Affidavit] properly" and that, if he had, he would have realized that Defendant Dokos included information from the Arrest Report and mischaracterized that information as based on his own personal knowledge. [Id. ¶ 57]. Finally, the Board noted that when Defendant Desmarais learned that Defendant Lavoie submitted the Arrest Report he wrote under Defendant Rivera's name, Defendant Desmarais "did not see that as problematic as long as the information was accurate." [Id. ¶ 58].

In all, the Board concluded that all Lowell Defendants had violated the Department's Rules and Regulations. [TAC ¶ 41].[6]

## B.    Procedural History

Plaintiff initiated this *pro se* action on August 27, 2020, while in custody at FCI-Danbury

---

[6] The Board found that Defendant Lavoie committed "the offense of False Information of Records[,]" [TAC ¶ 42], and displayed "Gross Incompetence" and "Conduct Unbecoming to an Officer[,]" [id. ¶ 46], and that both Defendants Rivera and Dokos were similarly responsible for the offense of "False Information of Records[,]" and displaying "Unsatisfactory Performance in [their] duties" and "Conduct Unbecoming to an Officer[,]" [id. ¶¶ 48, 52]. Additionally, the Board found that Defendant Penrose displayed "Gross Incompetence" and "Conduct Unbecoming of an Officer[,]" [id. ¶ 54], and Defendant Desmarais displayed "Unsatisfactory Performance in his duties" and "Conduct Unbecoming of an Officer[,]" [id. ¶ 56].

in Connecticut.  [ECF No. 1]; see also [ECF No. 4 at 1].  He filed an amended complaint on

September 16, 2020, [ECF No. 4], and a second amended complaint ("SAC") on March 8, 2021,

[ECF No. 18].  Defendants filed motions to dismiss the SAC for improper service.  [ECF Nos.

31, 45, 49, 53].  On March 3, 2022, the Court granted Defendants' motions in part, finding that

Plaintiff had not perfected service, but afforded Plaintiff additional time to do so.  [ECF No. 57].

Between April and June 2022, Defendants, including now-dismissed City of Lowell, all

filed motions to dismiss the SAC for failure to state a claim.  [ECF Nos. 65, 77, 87, 89].  On May

8, 2022, Counsel entered an appearance for Plaintiff.  [ECF No. 67].  On June 30, 2022, Plaintiff,

through Counsel, filed a motion for leave to amend his complaint for a third time, and attached

the proposed amended complaint.  [ECF Nos. 91–92].

As noted above, on July 26, 2022, the Court granted the City of Lowell's motion to

dismiss Plaintiff's claims against the City and all official-capacity claims against the Lowell

Defendants, which would lie against the City of Lowell.  See [ECF No. 77; ECF No. 96 at 10].

The Court denied Defendants Desmarais and Penrose's motion to dismiss for improper service,

[ECF No. 87], and granted Plaintiff additional time to effect service.  [ECF No. 96 at 7].

Because Plaintiff was proceeding in forma pauperis, the Court granted Plaintiff permission to

elect to have service made by the United States Marshals Service ("USMS") within 90 days of

the issuance of the summons.  [Id. at 11].  Defendants Dokos, Lavoie, and Rivera had moved to

dismiss, in part, because Plaintiff was one day late in filing and the action was therefore time-

barred.  [ECF No. 66 at 4].  The Court denied that motion as well.  [ECF No. 96 at 7–9].  The

Court also granted Plaintiff's motion to file a third amended complaint.  [Id. at 9–10].  As such,

the Court denied the remaining portions of the pending motions to dismiss as moot, but granted

Defendants leave to re-file motions in response to the TAC.  [ECF No. 96 at 10].

Plaintiff's operative complaint, the TAC, includes nine counts: Unlawful Arrest (Count 1); Unlawful Search and Seizure (Count 2), Excessive Use of Force (Count 3), Malicious Prosecution (Count 4), Negligent Supervision (Count 5), Failure to Train (Count 6),[7] Failure to Provide Medical Assistance (Count 7), Intentional Infliction of Emotional Distress (Count 8), and Negligent Infliction of Emotional Distress (Count 9).  [TAC ¶¶ 59–113].

On August 9, 2022, Defendant Vicente moved to dismiss the TAC for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), and for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6).  [ECF No. 99].  On August 16, 2022, Defendants Dokos, Lavoie, and Rivera filed a motion to dismiss pursuant to Rule 12(b)(6).  [ECF No. 101]. Finally, on December 5, 2022, Defendants Desmarais and Penrose filed a motion to dismiss for insufficient service, and failure to state a claim, pursuant to Rule 12(b)(6).  [ECF No. 108]. Plaintiff opposed Defendants Vicente, Dokos, Lavoie, and Rivera's motions on August 26, 2022, [ECF No. 105], and Defendants Desmarais and Penrose's motion on December 18, 2022, [ECF No. 110].  Defendants Desmarais and Penrose replied to Plaintiff's opposition on January 11, 2023.  [ECF No. 113].  All motions are now ripe for review.

## II.     STANDARD OF REVIEW

 "Rule 12(b)(5) empowers courts to dismiss a complaint for insufficient service of process."  Evans v. Staples, Inc., 375 F. Supp. 3d 117, 120 (D. Mass. 2019) (citing Fed. R. Civ. P. 12(b)(5)).  "When a defendant seasonably challenges the adequacy of service, the plaintiff has the burden of showing that service was proper."  Vázquez-Robles v. CommoLoCo, Inc., 757

---

[7] The Court previously dismissed Count 6, which Plaintiff only raised against the City of Lowell. See [ECF No. 96].

F.3d 1, 4 (1st Cir. 2014) (citation omitted).  A court may "look beyond the pleadings and may

consider affidavits and other documents to determine whether process was properly served[.]"

Cutler Assocs., Inc. v. Palace Constr., LLC, 132 F. Supp. 3d 191, 194 (D. Mass. 2015) (citation

omitted). "[A]ny factual ambiguities are to be resolved squarely in the plaintiff's favor."  Id.

(citation omitted).

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of subject

matter jurisdiction.  "[T]he party invoking the jurisdiction of a federal court carries the burden of

proving its existence."  Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Taber

Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)).  When confronted with such

a motion, "the district court must construe the complaint liberally, treating all well-pleaded facts

as true and indulging all reasonable inferences in favor of the plaintiff."  Aversa v. United States,

99 F.3d 1200, 1210 (1st Cir. 1996) (citing Murphy, 45 F.3d at 522).  Further, "[w]hen faced with

motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do

otherwise, should ordinarily decide the 12(b)(1) motion first."  Ne. Erectors Ass'n v. Sec'y of

Lab., 62 F.3d 37, 39 (1st Cir. 1995).

To evaluate a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court

must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable

inferences therefrom in the pleader's favor."  A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77,

80 (1st Cir. 2013) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011)).  "A

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007)).  The complaint must set forth "a short and plain statement

of the claim showing that the pleader is entitled to relief[,]" Maddox, 732 F.3d at 80 (quoting

Fed. R. Civ. P. 8(a)(2)), and should "contain 'enough facts to state a claim to relief that is plausible on its face[,]'" id. (quoting Twombly, 550 U.S. at 570). "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Iqbal, 556 U.S. at 678). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).

"The plausibility standard invites a two-step pavane." Maddox, 732 F.3d at 80 (citation omitted). First, courts "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, "the court must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

## III.     DISCUSSION[8]

### A.     Defendants Desmarais and Penrose's Motion to Dismiss for Insufficient Service

Defendants Desmarais and Penrose contend that the TAC must be dismissed against them

---

[8] The TAC, the operative complaint, omits many of the allegations in Plaintiff's previous complaint, including all information about the Parties, other than their first and last names. Compare [SAC] with [TAC]. The TAC nonetheless purports to "supplement[] [Plaintiff's] original Verified Complaint[,]" [TAC at 1], and "make[] no amendment to the parties section contained in [Plaintiff's] Verified Complaint[,]" [id. at 2]. This is not allowed by the Federal Rules of Civil Procedure. An "amended complaint completely supersedes [the] original

because the USMS improperly left the TAC and summonses with another officer at the Lowell Police Station, rather than personally serving the Defendants.  [ECF No. 109 at 5].  Plaintiff does not dispute that he has not perfected service, but rather responds that the USMS' failure to effectuate service within the 90-day time period is *per se* good cause, requiring the Court to extend the time period for service.  [ECF No. 110 at 2].  Further, Plaintiff asserts that Defendants have refused to waive personal service or to provide their home addresses, which also weighs in favor of finding good cause.  [Id.].  As noted in the Court's March 3, 2022 Order, the USMS' failure to effectuate service within the 90-day time period ordered by the Court constitutes good cause within the meaning of Rule 4(m).  [ECF No. 57 at 5].  This standard, however, applies to "a *pro se* plaintiff proceeding *in forma pauperis*[,]" [Id. (emphasis in original) (quoting Boyd v. Rue, No. 09-cv-10588, 2010 WL 3824106, at *1 (D. Mass. Sept. 27, 2010)], and Plaintiff is now represented by counsel.  While Plaintiff's other efforts may nevertheless weigh in favor of finding good cause and therefore extending the time period for service, as discussed below, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted against Defendants Desmarais and Penrose.  As such, any successful service would be futile, and "the

---

complaint, and thus the original complaint no longer performs any function in the case." Kolling v. Am. Power Conversion Corp., 347 F.3d 11, 16 (1st Cir. 2003) (citations omitted).  Courts "do not consider claims raised in [an] initial complaint that were not restated in [an] amended complaint." Ramallo Bros. Printing, Inc. v. El Día, Inc., 490 F.3d 86, 88 n.2 (1st Cir. 2007) (citations omitted).  Likewise, "allegations not included in [an] amended complaint 'f[a]ll by the wayside[.]'" Kolling, 347 F.3d at 16 (citation omitted).

The Court nonetheless reviewed the allegations in the SAC to determine if their incorporation would impact the disposition of any of Plaintiff's claims in the TAC, and therefore whether "justice [might] require[,]" Fed. R. Civ. P. 15(a), granting Plaintiff leave to amend.  The Court finds that the allegations in the SAC do not impact the disposition of any of Plaintiff's claims in his operative complaint and will therefore not grant Plaintiff leave to amend.  Although the Court engaged in this exercise in this instance, the Court warns Plaintiff's Counsel to be more mindful of federal and local procedural rules going forward.

issue of whether to extend the time period for service of process is moot." Mukherjee v. Blake, No. 12-cv-11381, 2013 WL 2299521, at *4 (D. Mass. May 24, 2013); see Perry v. Treseler, No. 18-cv-30194, 2020 WL 1877877, at *4 (D. Mass. Apr. 15, 2020) (holding that because motion to dismiss was likely to succeed and "permitting Plaintiff extra time to complete service would be futile[,]" "the issue of whether to extend the time period for service of process is moot" (quoting Mukherjee, 2013 WL 2299521, at *4) (further citation omitted)); see also Dzanku v. Brennan, 270 F. Supp. 3d 376, 380 (D. Mass. 2017) (dismissing for insufficient service in part because "the Amended Complaint fails to state a claim [and] it would be futile to grant [plaintiff] an extension of time for completing service").  The Court therefore finds that while Plaintiff has not perfected service on Defendants Desmarais and Penrose, given the futility, Plaintiff will not be afforded additional time to complete service.

### B.     State Tort Claims Against Defendant Vicente

Defendant Vicente argues that the Court lacks subject matter jurisdiction over Plaintiff's common-law tort claims against him, in both his official and individual capacities.  See [ECF 100 at 8–10].  As Vicente asserts, although the TAC does not specifically invoke the Federal Tort Claims Act ("FTCA"), the FTCA "provides the exclusive remedy to compensate for a federal employee's tortious acts committed within his or her scope of employment."  Roman v. Townsend, 224 F.3d 24, 27 (1st Cir. 2000) (citation omitted); see also Hernandez v. Mesa, 140 S. Ct. 735, 752 (2020) (Thomas, J., concurring) (By enacting the FTCA, "[Congress] has pre-empted the state tort suits that traditionally served as the mechanism by which damages were recovered from federal officers" (first citing 28 U.S.C. § 2679(b); and then citing Minneci v. Pollard, 565 U.S. 118, 126 (2012))).  In the context of FTCA claims, courts apply the state "common law test when considering whether an employee was acting within the scope of her employment."  Coyne v. United States, 233 F. Supp. 2d 135, 142 (D. Mass. 2002) (citing

Clickner v. City of Lowell, 663 N.E.2d 852, 855 (Mass. 1996)).  Per Massachusetts' test:

> A court should not construe the scope of an employee's employment restrictively, and should consider whether the conduct in question (1) was of the kind the employee was hired to perform; (2) occurred within authorized temporal and spatial limits; and (3) was motivated, at least in part, by a purpose to serve the employer.

Id. (citing Clickner, 663 N.E.2d at 855).  If a claim is found to relate to a federal employee's actions within the scope of their employment, "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." Cook v. United States, No. 20-cv-11907, 2021 WL 311444, at *1 (D. Mass. Jan. 29, 2021) (quoting McNeil v. United States, 508 U.S. 106, 113 (1993)).  "[A] claimant [must] file a claim with the relevant federal agency within two years after the claim has occurred[,]" Marino v. Gammel, 191 F. Supp. 2d 243, 252 (D. Mass. 2002), and this requirement is jurisdictional, Cook, 2021 WL 311444, at *1.

The Court finds that Plaintiff's allegations, which relate to Defendant Vicente's conduct during and following an alleged drug-related arrest, see [TAC ¶¶ 94–113], satisfy each of the factors described above, and therefore describe conduct committed within the scope of Defendant Vicente's work as a DEA Task Force member.  Plaintiff has not argued otherwise. Further, Plaintiff has failed to allege that he raised his claims against Defendant Vicente with the relevant federal agency, the DEA, within two years of their occurrence (or at all).  As such, the Court lacks subject matter jurisdiction and Plaintiff's tort claims must be dismissed.  See Marino, 191 F. Supp. 2d at 253 (holding, in screening *pro se* complaint that appeared to allege tort claims against DEA agents, that because "[p]laintiff has not asserted that he filed a claim with the [DEA] . . . or any other federal entity[,]" the court was "preclude[d] . . . from accepting [the] civil action as a suit for damages against the United States and its officers in official

capacities").[9]

Defendant Vicente's motion to dismiss Count 8 (Intentional Infliction of Emotional Distress), Count 9 (Negligent Infliction of Emotional Distress), and, to the extent it raises a tort claim, Count 7 (Failure to Provide Medical Assistance), is <u>GRANTED</u>.

### C.   State Tort Claims Against the Lowell Defendants

    i.   <u>Negligence Claims against the Lowell Defendants</u>

As Defendants Desmarais and Penrose argue, <u>see</u> [ECF No. 109 at 7–8, 11–13], the Massachusetts Tort Claims Act ("MTCA") insulates public employees from negligence claims, as long as the employee was acting within the scope of her employment.  <u>See</u> <u>Canales v. Gatzunis</u>, 979 F. Supp. 2d 164, 174 (D. Mass. 2013) (explaining that the MTCA both "authorizes certain negligence actions against public employers" and "shields public employees from personal liability for negligent conduct" (second excerpt quoting <u>Caisse v. DuBois</u>, 346 F.3d 213, 218 (1st Cir. 2003))).  Courts apply the same common law test to determine whether an employee is acting within the scope of his employment for both the FTCA and MTCA.  <u>See</u> <u>Clickner</u>, 663 N.E.2d at 855. The Court finds that Defendants' alleged negligent conduct, all of which relates to Plaintiff's arrest, the Arrest Report, the Search Warrant Affidavit, and the subsequent search of Plaintiff's apartment and prosecution, <u>see</u> [TAC ¶¶ 84–87, 94–100, 107–13], was done within the scope of their employment.  <u>See, e.g.</u>, <u>Evariste v. City of Boston</u>, No. 18-cv-12597, 2020 WL 1332835, at *8 (D. Mass. Mar. 23, 2020) (noting that there was no dispute that alleged false arrest and unlawful search was conduct within officers' scope of

---

[9] <u>See also</u> <u>Finelli v. Drug Enf't Agency</u>, No. 92-cv-03463, 1993 WL 51105, at *1–2 (S.D.N.Y. Feb. 24, 1993) (dismissing tort claims against DEA agents for negligence, wanton and willful wrongful conduct, false imprisonment, intentional infliction of emotional distress, and *prima facie* tort, because plaintiffs failed to exhaust the administrative remedies under the FTCA).

employment for purposes of the MTCA); Henriquez v. City of Lawrence, No. 14-cv-14710, 2015 WL 3913449, at *5 (D. Mass. June 25, 2015) (finding that police chief's alleged failure to act on complaints against officers for excessive force and denial of medical care was conduct within the scope of his employment); Opalenik v. LaBrie, 945 F. Supp. 2d 168, 196 (D. Mass. 2013) ("Police officers acting pursuant to a search warrant are public employees acting within the scope of their employment." (citing Sadlowski v. Benoit, No. 9801859, 2008 WL 2745157, at *7 (Mass. Super. Ct. June 26, 2008), aff'd, 917 N.E.2d 260 (Mass. App. Ct. 2009) (unpublished table decision))).  The Lowell Defendants are therefore immune from liability for Count 5 (Negligent Supervision), Count 9 (Negligent Infliction of Emotional Distress), and, to the extent it raises a negligence claim, Count 7 (Failure to Provide Medical Assistance).

> ii.     Intentional Infliction of Emotional Distress (Count 8), Against Defendants Rivera, Dokos, Desmarais, and Penrose

Plaintiff bases his intentional infliction of emotional distress ("IIED") claims on the fact that Defendants Rivera and Dokos[10] "arrested [him], wrote false police reports, [and] submitted a false search warrant affidavit," [TAC ¶ 102], and that Defendant Desmarais and Penrose "acted recklessly when they failed to review affidavits and police reports of the SIS Unit which they had a duty to supervise[,]" [id. ¶ 103].  Defendants argue this alleged conduct does not meet the high bar for an IIED claim.  The Court agrees.

Under Massachusetts law, to assert an IIED claim, Plaintiff must allege: "(1) that [a defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe."  Galvin v. U.S. Bank, N.A., 852 F.3d

---

[10] Plaintiff also asserted this claim against Defendant Vicente, but as discussed above, the Court lacks subject matter jurisdiction over this claim as brought against Defendant Vicente.

146, 161 (1st Cir. 2017) (quoting Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014)).

"The standard for making a claim of [IIED] is very high." Id. (citation omitted). "To be

considered extreme and outrageous, the defendant's conduct must be beyond all bounds of

decency and . . . utterly intolerable in a civilized community." Howcroft v. City of Peabody, 747

N.E.2d 729, 747 (Mass. App. Ct. 2001) (alteration in original) (citation omitted). "There is no

liability even if the defendant acted with an intent which is tortious or even criminal, with

malice, or with a degree of aggravation which would entitle the plaintiff to punitive damages for

another tort[,]" and "[n]ot even an intent to inflict emotional distress is sufficient." Galvin, 852

F.3d at 161 (citations and internal quotation marks omitted). "Instead, the tort requires 'a high

order of reckless ruthlessness or deliberate malevolence that . . . is simply intolerable.'" Morse

v. Mass. Exec. Off. of Pub. Safety Dep't of State Police, 123 F. Supp. 3d 179, 196 (D. Mass.

2015) (alteration in original) (quoting Conway v. Smerling, 635 N.E.2d 268, 273 (Mass. App. Ct.

1994)), aff'd in part, appeal dismissed in part sub nom. Morse v. Cloutier, 869 F.3d 16 (1st Cir.

2017).

　　　Where police officers "merely carr[y] out their obligations as law enforcement

officials[,]" their "conduct 'as a matter of law cannot be deemed extreme and outrageous.'"

Sietins v. Joseph, 238 F. Supp. 2d 366, 379 (D. Mass. 2003) (quoting Sena v. Commonwealth,

629 N.E.2d 986, 994 (Mass. 1994)). As to the arrest, assuming that Defendants Dokos and

Rivera were present, Plaintiff does not allege that these Defendants used excessive force on him

during the arrest, or that they were in a position to stop any use of excessive force. Cf. Gill v.

United States, 588 F. Supp. 3d 134, 139 (D. Mass. 2022) ("An officer's actions may be [deemed

extreme and outrageous] if he uses excessive force." (citing Barbosa v. Conlon, 962 F. Supp. 2d

316, 334 (D. Mass. 2013))). Further, Plaintiff concedes that the arresting officers believed they

had witnessed Plaintiff meeting with a known drug distributor.  Even assuming that belief was unreasonable and that "the arrest was made without probable cause, Plaintiff's IIED claim . . . still fail[s]."  Godette v. Stanley, 490 F. Supp. 2d 72, 81 (D. Mass. 2007); see also Guckenberger v. Bos. Univ., 957 F. Supp. 306, 319 (D. Mass. 1997) ("[T]he mere fact that the defendants' conduct may turn out to be violative of the plaintiff['s] civil rights does not . . . necessitate a finding that the conduct is sufficiently egregious to state a claim for [IIED]." (citation omitted)).

As to the Arrest Report and Search Warrant Affidavit, Plaintiff plausibly alleges that Defendants knowingly allowed the submission of information that was mischaracterized as being based on officers' personal knowledge, when it was not.  On the other hand, the Court finds that Plaintiff has failed to plausibly allege that any of these Defendants were aware that the information about the arrest itself was false, at the time the Arrest Report and Search Warrant Affidavit were submitted.  There is simply no allegation to that effect.[11]  While more care should have been taken to ensure that only accurate information was included in the Arrest Report and Search Warrant Affidavit, the Court finds that the unknowing inclusion of false information does not evince the "reckless ruthlessness or deliberate malevolence[,]" Morse, 123 F. Supp. 3d at

---

[11] Instead, the TAC alleges that Defendant Rivera had little to no personal knowledge of the events detailed in the Arrest Report, and Defendant Dokos was around the corner when the arrest occurred.  [TAC ¶¶ 33, 37].  Further, the Board found "Defendant Dokos used portions of the [Arrest Report] in his [A]ffidavit unaware that they contained incorrect information."  [Id. ¶ 49].  In or about October 2018, Defendants Rivera and Dokos were planning to testify to the version of the events detailed in the Arrest Report and Search Warrant Affidavit, until they were made aware that there were inconsistencies between that version of events and the surveillance video.  [Id. ¶¶ 8, 11–12].  This plausibly suggests Defendants Dokos and Rivera knew that they had submitted false information by October 2018, but not before then.  Likewise, the Board also found that Defendant Desmarais did not believe that submitting the Arrest Report under Defendant Rivera's name, even though he did not write it, was problematic, as long as the information was accurate, suggesting that at the time he believed that the information was accurate.  [Id. ¶ 92].  While the Board's findings do not conclusively establish that Defendants did not know the information was wrong, those allegations, along with those previously discussed, also do not establish the opposite.

196, required to support an IIED claim.

The Lowell Defendants' motions to dismiss Count 5 (Negligent Supervision), Count 8 (Intentional Infliction of Emotional Distress), Count 9 (Negligent Infliction of Emotional Distress), and, to the extent it raises a negligence claim, Count 7 (Failure to Provide Medical Assistance), are <u>GRANTED</u>.

### D.    Constitutional Claims Against Defendant Vicente in His Official Capacity

Defendant Vicente argues the Court lacks subject matter jurisdiction over Plaintiff's official-capacity constitutional claims against him.  <u>See</u> [ECF No. 100 at 7–8].  "[A] suit against a federal officer in h[is] official capacity is a suit directly against the United States and is therefore subject to the doctrine of sovereign immunity."  <u>Anderson v. Heffernan</u>, No. 12-cv-12173, 2013 WL 1629122, at *2 (D. Mass. Apr. 9, 2013) (first citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 165–66 (1985); and then citing <u>McCloskey v. Mueller</u>, 446 F.3d 262, 271–72 (1st Cir. 2006)).  "Under the doctrine of sovereign immunity, the Court lacks subject matter jurisdiction over a suit against the United States unless the government has explicitly waived its immunity."  <u>Id.</u> (first citing <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980); and then citing <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994).  While

> [t]he <u>Bivens</u> doctrine allows constitutional claims against federal officials, in their individual capacities, for actions taken under color of federal law[,] . . . the availability of that doctrine does not override bedrock principles of sovereign immunity so as to permit suits against the United States, its agencies, or federal officers sued in their official capacities.

<u>McCloskey</u>, 446 F.3d at 271–72 (first citing <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 397 (1971); and then citing <u>Ruiz Rivera v. Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000)).  The Court thus finds that it lacks subject matter jurisdiction over

Plaintiff's constitutional claims against Defendant Vicente in his official capacity.

Defendant Vicente's motion to dismiss Plaintiff's official-capacity constitutional claims, Count 1 (Unlawful Arrest), Count 2 (Unlawful Search and Seizure), Count 3 (Excessive Use of Force), Count 4 (Malicious Prosecution),[12] and, to the extent it raises a constitutional claim, Count 7 (Failure to Provide Medical Assistance), is <u>GRANTED</u>.

### E.    Constitutional Claims Against Defendants in Their Individual Capacities

#### i.    <u>Standard for Qualified Immunity</u>

Defendants assert that they are entitled to qualified immunity from several of Plaintiff's constitutional claims.  Under the doctrine of qualified immunity, for both § 1983 and <u>Bivens</u> claims, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (citations omitted); <u>see also</u> <u>Limone v. Condon</u>, 372 F.3d 39, 44 (1st Cir. 2004) ("Although [Defendants' qualified immunity arguments] involve claims based on two different legal theories—<u>Bivens</u> and section 1983—the analytical framework is . . . identical." (citing <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999))).

In determining whether a government official is entitled to qualified immunity, courts must consider (1) whether the facts alleged or shown by plaintiff constitute a violation of plaintiff's constitutional rights, and (2) whether that constitutional right was clearly established at the time of the alleged violation.  <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 269 (1st Cir. 2009)

---

[12] Defendants interpret Count 4 as a constitutional claim, brought under the Fourth Amendment, rather than a common-law tort claim.  <u>See</u> [ECF No. 100 at 12–14; ECF No. 102 at 12–13]. Plaintiff does not dispute that interpretation.  <u>See generally</u> [ECF No. 105].  The Court will therefore also treat Count 4 as a constitutional claim.

(citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)).  Determining whether a right is "clearly established" is also a two-party inquiry.  Id.  "The first sub-part requires the plaintiff to identify either 'controlling authority' or a 'consensus of cases of persuasive authority' sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm."  Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017) (quoting Layne, 526 U.S. at 617) (further citation omitted).  "The second-subpart asks whether an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law."  Id. (citing Wilson v. City of Boston, 421 F.3d 45, 57–58 (1st Cir. 2005)).  Courts may address these questions in any order.  See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

While "the defense [of qualified immunity] sometimes can be raised and evaluated on a motion to dismiss[,]" Haley v. City of Boston, 657 F.3d 39, 47 (1st Cir. 2011) (citing Siegert v. Gilley, 500 U.S. 226, 232–33 (1991)), "[i]t is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity, and courts often evaluate qualified immunity at the summary judgment stage."  Giragosian v. Bettencourt, 614 F.3d 25, 29 (1st Cir. 2010); see also Jakuttis v. Town of Dracut, No. 16-cv-12643, 2023 WL 1993756, at *6 (D. Mass. Feb. 14, 2023) ("'[A]dvancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch,' and the court will often lack the 'robust factual record' it needs to decide whether an official is entitled to qualified immunity at this stage." (first quoting Chamberlain v. City of White Plains, 960 F.3d 100, 111 (2d Cir. 2020); and then citing Reed v. Palmer, 906 F.3d 540, 548 (7th Cir. 2018))), appeal docketed, No. 23-1238 (1st Cir. Mar. 21, 2023).

    ii.       Unlawful Arrest (Count 1), Against Defendants Vicente, Dokos, and Lavoie

The Court reads Count 1 as alleging that Plaintiff's March 7, 2018 arrest violated his

Fourth Amendment rights.  See [TAC ¶¶ 59–64].  Defendants argue they had probable cause for that arrest and are therefore entitled to qualified immunity.  [ECF No. 100 at 14–15; ECF No. 102 at 8–9].  Plaintiff responds that Defendants are not entitled to qualified immunity, and, alternatively, that the Court lacks the requisite information to make that determination at this early stage of the litigation.  See [ECF No. 105 at 2–4].

None of the Defendants dispute that the right to be free from unlawful arrest has long been "clearly established."  See Goddard v. Kelley, 629 F. Supp. 2d 115, 128 (D. Mass. 2009). The Court therefore focuses its analysis on the remaining two questions in the qualified immunity analysis: whether Plaintiff has alleged a constitutional violation, and "whether an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law."  Alfano, 847 F.3d at 75.  In the context of an allegedly unlawful arrest, the answer to both of these questions turns on whether the officers had probable cause to make the arrest.  Cox v. Hainey, 391 F.3d 25, 31 (1st Cir. 2004).

"The constitutionality of a warrantless arrest 'depends . . . upon whether, at the moment the arrest was made, the officer . . . had probable cause to make it.'"  Logue v. Dore, 103 F.3d 1040, 1044 (1st Cir. 1997) (alterations in original) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).  "Probable cause for an arrest exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators."  Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004) (first citing Beck, 379 U.S. at 91; and then citing United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987)).  "To determine whether an officer had probable cause to make an arrest, [a court must] examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an

objectively reasonable police officer, amount to probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citation and internal quotation marks omitted).

Qualified immunity "requires a somewhat lesser showing." Cox, 391 F.3d at 31. "[I]n the case of a warrantless arrest, if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach." Id. (citing Ricci v. Urso, 974 F.2d 5, 7 (1st Cir. 1992)). "[L]aw enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." McDonald v. City of Boston, 334 F. Supp. 3d 429, 439 (D. Mass. 2018) (citation and internal quotation marks omitted), appeal dismissed, No. 18-1948, 2018 WL 7917582 (Dec. 27, 2013).

Plaintiff alleges that a joint task force "investigating drug distribution in northern MA and NH," had "received a tip that a target of [its] investigation would be traveling to Lowell." [TAC ¶ 2]. While "surveil[ling]" a "transaction" involving the target, Defendants observed what they "believed" was Plaintiff "meeting with a distributor in a taxi." [Id. ¶¶ 3–4]. Although the Arrest Report and Defendant Vicente's federal-court testimony stated otherwise, Plaintiff approached the taxi carrying a plastic bag and walked away from the taxi carrying the same plastic bag. The surveillance video confirms that. Defendant Vicente approached Plaintiff as he was walking away from the taxi. Plaintiff immediately dropped the plastic bag and Defendant Vicente slammed Plaintiff to the pavement, after which other officers piled on. There is no allegation concerning the contents of the bag nor is there documentation, subject to court review, that shows that the bag contained drugs or that drugs were found on Plaintiff's person. The facts before the Court may show that Plaintiff met with a potential distributor, but no more. It is therefore plausible that an "objectively reasonable police officer," Pringle, 540 U.S. at 371, would have lacked sufficient information to conclude that a "crime ha[d] been (or [wa]s about to

be) committed and that the putative arrestee likely is one of the perpetrators." Acosta, 386 F.3d at 9.  Further, based on these facts, the Court cannot determine if probable cause for the arrest was "arguable," or that Defendants were "reasonably" mistaken.  While discovery may ultimately show that probable cause existed or arguably existed for the arrest, the Court cannot make that determination at this stage of the litigation.  See Giragosian, 614 F.3d at 29.

Defendants Vicente, Dokos, and Lavoie's motions to dismiss Count 1 are therefore DENIED.

### iii.    Unlawful Search and Seizure (Count 2), Against Defendants Vicente, Dokos, and Lavoie

The Court understands Count 2 as alleging that the subsequent search of Plaintiff's apartment, which was based on the Search Warrant, violated the Fourth Amendment.  See [TAC ¶¶ 65–71].[13]  Defendants again assert that they are entitled to qualified immunity from this claim, which Plaintiff disputes.  See [ECF No. 100 at 16; ECF No. 102 at 9–12; ECF No. 105 at 2–4]. The Defendants do not dispute that the constitutional right is clearly established, so the Court will address whether Plaintiff has sufficiently alleged a constitutional violation and whether a

---

[13] In the context of this claim, the TAC also states that "Defendant Vicente, Defendant Dokos, and Defendant Lavoie did not have a valid arrest warrant to arrest the Plaintiff" and "Defendant Vicente, Defendant Dokos, and Defendant Lavoie lacked probable cause to arrest the Plaintiff but still arrested him."  [TAC ¶¶ 66, 70].  It is not clear, from either the SAC or TAC, to what arrest Plaintiff refers.  To extent that the TAC is referring to Plaintiff's March 7, 2018 warrantless arrest, the Court's analysis would be the same as that applied to Count 1.  The Court will therefore not consider this arrest in the context of this claim.  It is also possible, as Defendant Vicente suggests, see [ECF No. 100 at 16], that these allegations relate to a later arrest.  The only other information about a subsequent arrest, in either the SAC or TAC, are Plaintiff's cursory references in the SAC to being "federally arrested" on "Apr. 9th," without additional detail.  See [SAC at 18–19].  Plaintiff does not allege whether there was a warrant for this arrest, or, if there was, what information that warrant was based on.  The Court finds that Plaintiff's limited allegations related to this arrest are "simply too vague and bare-boned," Quiñones-Irizarry v. Corporación del Fondo del Seguro del Estado, 257 F. Supp. 3d 206, 214 (D.P.R. 2017) (citation omitted), to support this claim.  The Court will therefore not consider this subsequent arrest in evaluating this claim.

reasonable officer would have known that his conduct violated Plaintiff's constitutional rights.

"With limited exceptions, [the Fourth Amendment] requires police officers to secure a search warrant supported by probable cause prior to effecting a search or seizure." United States v. Gifford, 727 F.3d 92, 98 (1st Cir. 2013) (citing United States v. Paneto, 661 F.3d 709, 713 (1st Cir. 2011)). "An officer who obtains a warrant through material false statements which result in an unconstitutional search may be held personally liable for his actions under § 1983." Aponte Matos v. Toledo Davila, 135 F.3d 182, 187 (1st Cir. 1998). "The affidavit need contain a falsehood; the falsehood must be such that its deletion would eliminate probable cause; and the falsehood must have been made deliberately, or at least with reckless disregard for the truth." Jordan v. Town of Waldoboro, 943 F.3d 532, 541 (1st Cir. 2019), abrogated on other grounds by Thompson v. Clark, 142 S. Ct. 1332 (2022). "Reckless disregard of the truth in the submission of a warrant application in turn may be established if the affiant 'in fact entertained serious doubts as to the truth of the allegations' or where 'circumstances evinc[ed] obvious reasons to doubt the veracity of the allegations' in the application." Reyes-Reyes v. Toledo-Davila, 860 F. Supp. 2d 152, 161 (D.P.R. 2012) (alteration in original) (quoting United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002)).

"[W]here [an] allegedly false statement was necessary to establish probable cause, defendant 'will not be protected by qualified immunity' if plaintiffs prevail at trial on [their] claim that defendant lied in [the] search warrant application." Burke v. Town of Walpole, 405 F.3d 66, 82 (1st Cir. 2005) (quoting Aponte Matos, 135 F.3d at 185); see also Jordan, 943 F.3d at 548 ("There is no good reason to provide such protection to an officer who deliberately paints a misleading picture of the facts in order to procure a warrant."), abrogated on other grounds by

Thompson, 142 S. Ct. 1332.

        1.      Defendant Vicente

Defendant Vicente argues that this claim must be dismissed against him because Plaintiff has failed to allege that Defendant Vicente was involved in any constitutional violation. He asserts that Plaintiff has not alleged that Defendant Vicente "participated in or was even present for" the allegedly unlawful search. [ECF No. 100 at 16 (emphasis omitted)]. Further, Defendant Vicente argues that to the extent Plaintiff claims that his provision of false information led to the unlawful search and seizure, that is relevant to his malicious prosecution claim, not his unlawful search and seizure claim. [Id. at 16 n.7]. It is not clear to the Court that an official must participate in a search or seizure to be held liable for false statements in an affidavit supporting a warrant, under an unlawful search and seizure theory. See Kalina v. Fletcher, 522 U.S. 118, 120, 131 (1997) (holding "§ 1983 creates a damages remedy against a prosecutor for making false statements of fact in an affidavit supporting an application for an arrest warrant" when prosecutor is "perform[ing] the function of a complaining witness" (citations omitted)); see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 51 (1st Cir. 2009) (under § 1983, "an actor is responsible for those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties" (citation and internal quotation marks omitted)). That said, the Court agrees that Plaintiff has failed to sufficiently allege that Defendant Vicente played a role in either the preparation of the Search Warrant Affidavit or the search itself, or that the inclusion of false statements in the Search Warrant Affidavit was a reasonably foreseeable consequence of Defendant Vicente's actions. See Sanchez, 590 F.3d at 48 ("In response to a motion to dismiss, [the Court] must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted.").

Interpreting the allegations in the light most favorable to Plaintiff, it appears that

Defendant Vicente provided false information to Defendant Lavoie and may have assisted Defendant Lavoie in drafting the Arrest Report (though Plaintiff clearly states that Defendant Lavoie typed the Arrest Report).  Defendant Dokos then included that information from the Arrest Report in the Affidavit submitted to obtain the Search Warrant.  It does not appear, however, that Defendant Vicente was involved in the preparation of the Search Warrant Affidavit.  Further, Plaintiff has not alleged that it was reasonably foreseeable to Defendant Vicente that the information he provided to Defendant Lavoie would be used in the Search Warrant Affidavit.  See Sanchez, 590 F.3d at 51. The Court cannot plausibly infer from these facts that it was reasonably foreseeable to Defendant Vicente that the information he provided, which was included in the Arrest Report would then be included in the Search Warrant Affidavit, and therefore the Court finds he cannot be held liable for any constitutional violation that resulted from the Search Warrant.[14]

### 2.    Defendants Dokos and Lavoie

Defendants Dokos and Lavoie again assert that they are entitled to qualified immunity because the Search Warrant was supported by probable cause.  [ECF No. 102 at 9–12].  Further, to the extent false statements were included in the Search Warrant, Defendants argue that Plaintiffs' allegations suggest that Defendants were unaware that they were false, and therefore they are entitled to qualified immunity.  [Id. at 10].

First, given Plaintiff's allegations of specific misinformation in the Search Warrant Affidavit, the Count finds that it lacks sufficient information to determine whether the Search Warrant was supported by probable cause, and dismissal on that basis would be premature.  See

---

[14] As discussed further below, following Ziglar v. Abbasi, 582 U.S. 120 (2017), and Egbert v. Boule, 142 S. Ct. 1793 (2022), there likely is not a Bivens remedy available for an unlawful search and seizure claim based on the submission of false statements in a warrant application, which also counsels in favor of dismissal.

Moreta-Ramirez v. Lemert, 156 F. Supp. 2d 138, 144–45 (D.P.R. 2001) ("The determination of whether or not there was probable cause to issue the warrant is a subject best addressed through a summary judgment motion, because that finding necessarily requires a determination of what exactly was disclosed or undisclosed to the U.S. Magistrate–Judge. . . . [A]t this stage, dismissal on these grounds would be premature and inappropriate." (citing Maryland v. Garrison, 480 U.S. 79, 85 (1987))).  Additionally, while Plaintiff's allegations suggest that Defendants Dokos and Lavoie unknowingly included false information in the Arrest Report and Search Warrant Affidavit, there is insufficient information to determine whether it was done with "reckless disregard for the truth."  See Reyes-Reyes, 860 F. Supp. 2d at 161.  Therefore, the Court cannot determine at this stage whether Defendants may be entitled to qualified immunity from this claim.

As to Count 2, Defendant Vicente's motion to dismiss is GRANTED, and Defendants Dokos and Lavoie's motion to dismiss is DENIED.

        iv.        Excessive Use of Force (Count 3), Against Defendant Vicente, Dokos, Rivera, and Lavoie

The Court understands Count 3 as alleging that Defendants used "excessive force" against Plaintiff during his March 7, 2018 arrest, in violation of his Fourth Amendment rights. Defendants Vicente, Rivera, and Lavoie all argue that Plaintiff has failed to allege a Fourth Amendment violation against them.  See [ECF No. 102 at 12; ECF No. 100 at 11 n.5]. Defendant Vicente also argues that Plaintiff cannot raise this as a Bivens claim against him.  See [ECF No. 100 at 10–11].

To prevail on an excessive force claim under the Fourth Amendment, a Plaintiff must show that "the defendant employed force that was unreasonable under all the circumstances." Correia v. Feeney, 620 F.3d 9, 12 (1st Cir. 2010) (quoting Morelli v. Webster, 552 F.3d 12, 23

(1st Cir. 2009)).  This standard requires an inquiry into the circumstances of the particular case to determine if a reasonable officer would have thought the particular use of force was reasonable, including: "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of officers or others, and whether [the suspect] [was] actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989) (citation omitted).  It has long been recognized that police officers have a right to use some degree of physical coercion or threat of such coercion to make an arrest.  See id.; Terry v. Ohio, 392 U.S. 1, 22–27 (1968).  Courts apply an objective reasonableness standard to determine whether force was unconstitutionally excessive to account for the fact that "police officers are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396–97.

### 1. Defendant Vicente

Plaintiff alleges that during the arrest, Defendant Vicente slammed Plaintiff to the pavement.  The Court finds that Plaintiff's allegations that he "immediately dropped the bag[,]" [TAC ¶ 25], and "did not resist arrest or attempt to enter any buildings[,]" [id. ¶ 26], plausibly indicate that he did not pose an immediate threat nor was he attempting to evade arrest.  At this early stage, these allegations are sufficient to state an excessive force claim against Defendant Vicente.  See Parker v. Gerrish, 547 F.3d 1, 3 (1st Cir. 2008) (upholding jury verdict finding officer guilty of excessive force where officer tasered plaintiff who had generally complied with all police orders and was non-threatening).

Defendant Vicente argues that Plaintiff cannot raise this claim against him because there is no Bivens remedy available.  [ECF No. 100 at 10–11].  "The Bivens doctrine allows plaintiffs to vindicate certain constitutionally protected rights through a private cause of action for damages against federal officials in their individual capacities." DeMayo v. Nugent, 517 F.3d

11, 14 (1st Cir. 2008) (citation omitted).  Defendant Vicente avers that there is no private right of action for Plaintiff's claim, because, under recent Supreme Court precedent, <u>Egbert v. Boule</u>, 142 S. Ct. 1793 (2022), it presents a new context that does not warrant a <u>Bivens</u> remedy.  [ECF No. 100 at 10–11].  The Court disagrees.

In <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court determined that a man who had been handcuffed in his home without a warrant by officers of the Federal Bureau of Narcotics (the predecessor organization to the DEA), had a Fourth Amendment right to be free from unreasonable searches and seizures. <u>Id.</u> at 397.  The Supreme Court held that although there was no statutory cause of action, the petitioner could bring a damages claim against the officers because such a remedy could be judicially implied under the Constitution.  <u>See Id.</u> at 399 (Harlan, J., concurring).  Since <u>Bivens</u>, the Supreme Court has only extended this implied cause of action to two more contexts: Fifth Amendment due process claims for sex-based discrimination, <u>see Davis v. Passman</u>, 442 U.S. 228 (1979), and Eighth Amendment deliberate indifference claims for failure to provide proper medical attention, <u>see Carlson v. Green</u>, 446 U.S. 14 (1980).  In more recent cases, including <u>Egbert</u>, the Supreme Court has cautioned that "recognizing a cause of action under <u>Bivens</u> is 'a disfavored judicial activity[,]'" and "'[e]ven a single sound reason to defer to Congress' is enough to require a court to refrain from creating such a remedy."  <u>Egbert</u>, 142 S. Ct. at 1803 (first quoting <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 135 (2017)); and then quoting <u>Nestlé USA, Inc. v. Doe</u>, 141 S. Ct. 1931, 1937 (2021) (plurality opinion)).

As articulated in <u>Abbasi</u>, and re-stated in <u>Egbert</u>, the Supreme Court has codified a two-step process for evaluating a proposed <u>Bivens</u> claim.  <u>Abbasi</u>, 582 U.S. at 138; <u>Egbert</u>, 142 S. Ct. at 1803.  First, the court must determine "whether the case presents 'a new <u>Bivens</u> context'—i.e.,

is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages

action."  Egbert, 142 S. Ct. at 1803 (alteration in original) (quoting Abassi, 582 U.S. at 139).

"Second, if a claim arises in a new context, a Bivens remedy is unavailable if there are 'special

factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh

the costs and benefits of allowing a damages action to proceed.'"  Id. at 1803 (quoting Abbasi,

582 U.S. at 136).  "If there are alternative remedial structures in place, 'that alone,' like any

special factor, is reason enough to 'limit the power of the Judiciary to infer a new Bivens cause

of action.'"  Id. at 1804 (quoting Abbasi, 582 U.S. at 137).

 In Egbert, the Supreme Court relied on this framework to address whether a Bivens

remedy existed for a Fourth Amendment excessive force claim against Border Patrol agents.

The Ninth Circuit had held that this was a "new Bivens context," and that "special factors" did

not counsel against recognizing a cause of action in this context.  Egbert, 142 S. Ct. at 1804.  The

Supreme Court reversed, holding that there was no Bivens remedy available because "Congress

is better positioned to create remedies in the border-security context, and the Government

already has provided alternative remedies[.]"  Id.  Defendant Vicente argues that the Court

should similarly hold that no Bivens remedy is available here.  The Court disagrees.

 The Court finds that a Fourth Amendment claim for the use of excessive force during a

warrantless arrest by a DEA Task Force member (as opposed to a Border Patrol agent), is not

"meaningfully different" from the claim in Bivens.  It is therefore not a "new context" for a

Bivens claim.  As the Southern District of New York explained, in evaluating a Fourth

Amendment claim for the use of excessive force by a DEA agent:

> The case before this Court is . . . a run-of-the-mill challenge to a standard law
> enforcement operation. The allegations do not present a context meaningfully
> different from Bivens.  For one, both Bivens and this case concern the same type
> of federal officers: narcotics officers.  Moreover, the "legal mandate under which

the officer was operating" is not meaningfully different, because the officers in both cases carried out the same category of "official action": an arrest of someone suspected of a narcotics offense.

Bueno Diaz v. Mercurio, 442 F. Supp. 3d 701, 708 (S.D.N.Y. 2020) (first citing Bivens, 403 U.S. at 389; and then quoting Abbasi, 582 U.S. at 140) (further citations omitted).  Unlike in Egbert, this case does not implicate the "border-security context," and therefore the fact that "[m]atters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention" does not counsel against recognizing a Bivens remedy here.  See Egbert, 142 S. Ct. at 1804–05 (alteration in original) (quoting Haig v. Agee, 453 U.S. 280, 292 (1981)).  Finally, contrary to Defendant Vicente's arguments otherwise, "because this Court is not fashioning a new Bivens context, the Court need not consider alternative remedial structures."  Kennedy v. Massachusetts, No. 22-cv-11152, 2022 WL 17343849, at *4 (D. Mass. Nov. 30, 2022) (citing Egbert, 142 S. Ct. at 1804).

In summary, the Court finds that Plaintiff has adequately alleged a Fourth Amendment excessive force claim against Defendant Vicente and may bring this claim as a Bivens action.

### 2.    Defendants Dokos, Rivera, and Lavoie

Though not entirely clear from the TAC, it appears that Plaintiff also seeks to a bring an excessive force claim against Defendants Rivera and Lavoie, and possibly Defendant Dokos. See [TAC ¶¶ 78, 96].  Defendants Dokos, Rivera, and Lavoie argue that Plaintiff has not alleged that they physically touched Plaintiff and therefore that any claim for excessive force fails.  See [ECF No. 102 at 12].  The Court agrees.  See Correia, 620 F.3d at 12 (explaining that Plaintiff must establish that "the defendant employed force that was unreasonable under all the

circumstances" (citation omitted)).[15]

As to Count 3, Defendant Vicente's motion to dismiss is <u>DENIED</u>, and Defendants

Dokos, Rivera, and Lavoie's motion to dismiss is <u>GRANTED</u>.

> v.   <u>Malicious Prosecution (Count 4), Against Defendants Vicente, Dokos, and Lavoie</u>

The Court reads Count 4 as pertaining to Plaintiff's arrest and subsequent detention and

Defendants Vicente, Dokos, and Lavoie's allegedly false statements in the Arrest Report and

Search Warrant Affidavit, which led to the state charges that were ultimately dropped.  [TAC

¶¶ 79–83].  Plaintiff also references Defendant Vicente's allegedly false testimony at a hearing

related to the federal charges brought against Plaintiff.  [<u>Id.</u> ¶ 81].  Defendants Dokos and Lavoie

again assert they are entitled to qualified immunity and Defendant Vicente argues the claim must

be dismissed against him because there is no <u>Bivens</u> remedy available.  <u>See</u> [ECF No. 100 at 12–

14; ECF No. 102 at 12–13; ECF No. 105 at 2–4].

To succeed on a § 1983 claim for malicious prosecution, a plaintiff must establish that

"the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by

---

[15] Defendants further assert that if Plaintiff intended to bring a failure to intervene claim against them, that is a separate claim that he has not plead.  [ECF No. 102 at 12].  Assuming that Plaintiff did intend to raise this claim, the Court nevertheless finds it must be dismissed.  To prevail on a claim for failure to intervene, a plaintiff must show that a defendant "1) was present when excessive force was used, 2) observed the use of excessive force, 3) was in a position to realistically prevent that force and 4) had sufficient time to do so."  <u>Walker v. Jackson</u>, 56 F. Supp. 3d 89, 96 (D. Mass. 2014) (citation omitted).  However, "mere presence at the scene, without more, does not" constitute a violation for failure to intervene.  <u>Calvi v. Knox County</u>, 470 F.3d 422, 428 (1st Cir. 2006).  Plaintiff fails to allege any facts that indicate Defendants Dokos, Rivera, or Lavoie were in a position or had sufficient time to realistically prevent any excess force used by Defendant Vicente or other officers.  <u>See</u> <u>Walker</u>, 56 F. Supp. 3d at 96–97.  Thus, the facts as alleged are insufficient to state a plausible claim for relief based on a failure to intervene theory of liability.

probable cause,[16] and (3) criminal proceedings terminated in plaintiff's favor."  Hernandez-

Cuevas v. Taylor, 723 F.3d 91, 101 (1st Cir. 2013) (citation omitted).  There is no "actual

malice" element to the constitutional claim in this Circuit.  See id. at 99–101.  To satisfy

"causation," Plaintiff must "demonstrate that law enforcement officers were responsible for his

continued, unreasonable pretrial detention[.]"  Id. at 100 (citation omitted).  This, in turn, may be

established by showing that the officers "made, influenced, or participated in the decision to

prosecute[,]" id. (quoting Sykes v. Anderson, 625 F.3d 294, 308–09 (6th Cir. 2010)), by, for

example, (1) lying to or misleading prosecutors; (2) failing to disclose exculpatory evidence; or

(3) unduly pressuring the prosecutor to seek the indictment, id.  Thus, when establishing

causation, the plaintiff must demonstrate that the actions or statements of law enforcement

officers amounted to "deliberate falsehood" or "reckless disregard for the truth[.]"  Id. at 102

(quoting Franks v. Delaware, 438 U.S. 154, 171 (1978)).  Although there is no "actual malice"

element to the constitutional claim, id. at 99–101, the First Circuit has explained "[t]his kind of

reprehensible behavior seems indistinguishable from the common law element of malice."  Id. at

---

[16] "[M]alicious prosecution permits damages for a deprivation of liberty—a seizure—pursuant to
legal process."  Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001) (first citing Heck v.
Humphrey, 512 U.S. 477, 484 (1994); and then citing Calero-Colon v. Betancourt-Lebron, 68
F.3d 1, 3 (1st Cir. 1995)).  "Generally, the offending legal process comes either in the form of an
arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging
document (in which case the sum of post-arraignment deprivations would comprise the seizure)."
Id. (citing Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 117 (2d Cir. 1995)).  Where a plaintiff is
"arrested without a warrant . . . their arrest[]—which antedated any legal process—cannot be part
of the Fourth Amendment seizure upon which they base their § 1983 claim[]."  Id.  Although it is
not entirely clear from the TAC, the Court understands Plaintiff to allege that he was detained for
some amount of time, either after he was charged following the March 7, 2018 arrest, or after a
warrant was issued related to a subsequent arrest.  See [TAC ¶¶ 66, 79–83, 98].

102.

1.    Defendant Vicente

Defendant Vicente argues that Plaintiff cannot assert a malicious prosecution claim

against him because such a claim is substantially different than the claim in Bivens, and "sound

reasons" exist to suggest that "Congress might be better equipped to create a damages remedy."

[ECF No. 100 at 12].[17]  Since Abbasi, several courts have declined to recognize a Bivens action

in the context of malicious prosecution and other similar claims against DEA employees.  See,

e.g., Boudette v. Sanders, No. 18-cv-02420, 2019 WL 3935168, at *5 (D. Colo. Aug. 19, 2019)

(involving malicious prosecution claim); Karkalas v. Marks, No. 19-cv-00948, 2019 WL

3492232, at *6–14 (E.D. Pa. July 31, 2019) (involving claim for "unlawful prosecution and

pretrial detention following allegedly false and misleading statements to a grand jury"), aff'd,

845 F. App'x 114 (3d Cir. 2021); Economan v. Cockrell, No. 20-cv-00032, 2020 WL 6874134,

at *24 (N.D. Ind. Nov. 23, 2020) (involving claim related to "present[ing] false evidence for the

purpose of seizing the Plaintiffs' assets, in violation of the Plaintiffs' Fourth Amendment right to

be free from unreasonable search and seizure").  Courts have held the same in the context of

other classes of defendants, reasoning that these claims were "meaningfully different" from the

---

[17] Although the First Circuit previously dismissed a Bivens claim for malicious prosecution on
qualified-immunity grounds, thereby assuming the existence of a claim, see Pagan-Gonzalez v.
Moreno, 919 F.3d 582, 602 (1st Cir. 2019), the First Circuit has not evaluated this claim's
viability under the framework articulated in Abbasi.  The Court therefore undertakes this
analysis.  See Gonzalez v. Velez, 864 F.3d 45, 52–53 (1st Cir. 2017) ("[W]hen a Bivens-type
claim is lodged, the appropriate analysis must begin by determining whether the plaintiff is
seeking to extend the Bivens doctrine to a new context . . . . Once it is determined that the
context is new, the next step is to ask whether an alternative means of obtaining relief exists and,
if so, whether 'special factors' counsel hesitation in extending the reach of the Bivens doctrine."
(first citing Abbasi, 582 U.S. 148; and then quoting id. at 139)); see also Vanderklok v. United
States, 868 F.3d 189, 199–200 (3d Cir. 2017) (concluding that, although the Third Circuit has
previously held that "First Amendment retaliation claims [were] permitted under Bivens[,]" after
Abbasi, the court "must look at the issue anew in this particular context . . . and as it pertains to
this particular category of defendants").

claim in <u>Bivens</u>, irrespective of the defendants at issue.  <u>See, e.g.</u>, <u>Quinones-Pimentel v. Cannon</u>, No. 20-cv-01443, 2022 WL 826344, at *7, *20 (D.P.R. Mar. 17, 2022) (declining to recognize Fourth Amendment <u>Bivens</u> claim related to FBI agents allegedly "'formulating false and perjured evidence and statements to be used in support of the affidavit' for a search warrant, conspiring to file an affidavit under oath containing false information, and intentionally deceiving the Magistrate Judge to get her to issue the search warrant"), <u>appeal docketed</u>, No. 22-1307 (1st Cir. Apr. 29, 2022); <u>Annappareddy v. Pascale</u>, 996 F.3d 120, 126 (4th Cir. 2021); <u>Cantu v. Moody</u>, 933 F.3d 414, 424 (5th Cir. 2019); <u>Lane v. Schade</u>, No. 15-cv-01568, 2018 WL 4571672, at *6–7 (D.N.J. Sept. 24, 2018); <u>Xi v. Haugen</u>, No. 17-cv-02132, 2021 WL 1224164, at *19 (E.D. Pa. Apr. 1, 2021), <u>appeal docketed</u>, No. 21-2798 (3d Cir. Sept. 27, 2021).

The Court similarly finds that Plaintiff's claim, related to Defendant Vicente's allegedly false statements in the Arrest Report and Search Warrant Affidavit, is meaningfully different from the claim in <u>Bivens</u>, which related to a warrantless search and seizure involving excessive force.  For example, as the Fourth Circuit explained in <u>Annappareddy</u>, "[t]o succeed on [this] claim[], [Plaintiff] would have to establish that the defendant[] knowingly and intentionally or with reckless disregard for the truth made false statements or omissions in the warrant affidavit, and that those false statements or omissions were material to the magistrate judge's finding of probable cause."  996 F.3d at 136 (citation omitted).  "<u>Bivens</u> did not require this type of fact-checking and conscience-probing, . . . which can, as the Supreme Court has warned, impose 'substantial costs.'"  <u>Id.</u> (alteration in original) (citations omitted).  This claim therefore implicates a "new context," requiring the Court to evaluate whether there are "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  <u>See</u> <u>Egbert</u>, 142 S. Ct. at 1803 (quoting

Abassi, 582 U.S. at 136).  As discussed above, the existence of "alternative remedial structures[,] . . . like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new Bivens cause of action.'"  Id. at 1804 (quoting Abassi, 582 U.S. at 137).  Here, as Defendant Vicente argues, Congress has established remedial structures within the Department of Justice to address "complaints of criminal wrongdoing or administrative misconduct" by DEA agents.  See [ECF 100 at 11] (first citing 5 U.S.C. App. 3 §§ 3, 8e, 12; and then citing 28 C.F.R. § 0.29c(a), (c)).  In Egbert, in evaluating a claim that also implicated a new Bivens context, the Supreme Court found that similar remedies "foreclose[d] a Bivens action[.]"  Egbert, 142 S. Ct. at 1806.  The Court therefore finds there is no Bivens remedy available for Plaintiff's malicious prosecution claim.

### 2.    Defendants Dokos and Lavoie

Defendants Dokos and Lavoie argue that they are entitled to qualified immunity from this claim because they had probable cause to arrest Plaintiff.  As discussed above, the Court finds that it cannot determine whether there was probable cause at this early stage of the litigation, and therefore it will not dismiss Plaintiff's malicious prosecution claim on this ground.  See Watson v. Mita, No. 16-cv-40133, 2017 WL 4365986, at *6 (D. Mass. Sept. 29, 2017) (denying motion to dismiss malicious prosecution claim because several issues, including causation and probable cause, "require more factual analysis than is appropriate at this stage of the litigation").

As to Count 4, Defendant Vicente's motion to dismiss is GRANTED, and Defendants Dokos and Lavoie's motion to dismiss is DENIED.

### i.    Failure to Provide Medical Assistance (Count 7), Against Defendants Vicente, Dokos, Rivera, Desmarais, and Penrose

The Court understands Count 7 to allege that Defendants failed to provide medical care to Plaintiff for injuries sustained during his March 7, 2018 arrest.  See [TAC ¶¶ 94–100].  As

discussed above, Defendant Vicente reads this as a common-law tort claim, and argues that the

Court lacks jurisdiction, because Plaintiff has failed to allege that he exhausted his administrative

remedies before bringing this suit.  See [ECF No. 100 at 8–10].  The Court agrees, and finds that

under this reading of the claim, the Lowell Defendants are also immune from liability, pursuant

to the MTCA.  See, e.g., Spencer v. City of Boston, No. 13-cv-11528, 2015 WL 6870044, at *9

(D. Mass. Nov. 6, 2015) (holding that alleged negligent failure to provide medical care to

arrestee for injuries caused by the arrest was conduct within the scope of Boston police officers'

employment, and officers were therefore immune from liability).

      The Lowell Defendants read Count 7 as a constitutional claim asserting that Defendants

were deliberately indifferent to Plaintiff's serious medical needs and argue that Plaintiff has

failed to allege several elements of the claim.  The Court again agrees.  "The due process clause

of the Fourteenth Amendment requires 'responsible governmental authorities to provide medical

care to persons who have been injured while being apprehended by the police.'"  Barbosa, 962 F.

Supp. 2d at 330 (quoting Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir.

1990)).  "The boundaries of this duty have not been plotted exactly; however, it is clear that they

extend at least as far as the protection that the Eighth Amendment gives to a convicted prisoner."

Miranda-Rivera v. Toledo-Davila, 813 F.3d 64, 74 (1st Cir. 2016) (quoting Gaudreault, 923 F.2d

at 208); see also Karmue v. Remington, No. 17-cv-00107, 2020 WL 1290605, at *13 (D.R.I.

Mar. 18, 2020) (explaining that "[a] federal pretrial detainee[]" has the same protections under

the Fifth Amendment (citing Perry v. Roy, 782 F.3d 73, 78–79 (1st Cir. 2015) (further citation

omitted)).

      "In order to succeed in an Eighth Amendment claim based on denied or inadequate

medical care, a prisoner must satisfy: '(1) an objective prong that requires proof of a serious

medical need, and (2) a subjective prong that mandates a showing of prison administrators'
deliberate indifference to that need.'" Spencer, 2015 WL 6870044, at *7 (quoting Kosilek v.
Spencer, 774 F.3d 63, 82 (1st Cir. 2014)) (further citation omitted).  As to the objective
component, a plaintiff must plead facts, which, if true, show "a serious medical need for which
[the plaintiff] has received inadequate treatment."  Kosilek, 774 F.3d at 85.  For purposes of the
Eighth Amendment, a medical need is "serious" if it "has been diagnosed by a physician as
mandating treatment, or one that is so obvious that even a lay person would easily recognize the
necessity for a doctor's attention."  Id. at 82 (quoting Gaudreault, 923 F.2d at 208).  "A
significant risk of future harm that prison administrators fail to mitigate may suffice under the
objective prong."  Id. at 85 (citations omitted).  The objective prong "does not impose upon
prison administrators a duty to provide care that is ideal, or of the prisoner's choosing."  Id. at 82
(citations omitted).

The subjective component requires factual allegations supporting an inference of
"deliberate indifference" by the defendants.  Kosilek, 774 F.3d at 83 (citation omitted).
Deliberate indifference refers to "a narrow band of conduct[.]"  Id. (quoting Fenney v. Corr.
Med. Servs., Inc., 464 F.3d 158, 162 (1st Cir. 2006)).  Demonstrating deliberate indifference
requires allegations supporting a conclusion "that the absence or inadequacy of treatment is
intentional" rather than simply inadvertent.  Perry, 782 F.3d at 78 (citations omitted).  "The
obvious case [of deliberate indifference] would be a denial of needed medical treatment in order
to punish the inmate."  Kosilek, 774 F.3d at 83 (quoting Watson v. Caton, 984 F.2d 537, 540 (1st
Cir. 1993)).  "But deliberate indifference may also reside in 'wanton' decisions to deny or delay
care where the action is recklessness, 'not in the tort law sense but in the appreciably stricter
criminal-law sense, requiring actual knowledge of impending harm, easily preventable.'"

Watson, 984 F.2d at 540 (first citing Wilson v. Seiter, 501 U.S. 294, 302 (1991); and then quoting DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991)).

Plaintiff alleges that Defendant Vicente slammed him to the ground during his March 7, 2018 arrest, and that other Defendants, possibly Defendants Dokos, Lavoie, and/or Rivera, witnessed Plaintiff being slammed to the ground.  Further, he alleges that he informed Defendants, though he does not specify which defendants, that he was injured and "in need of immediate medical care for his back, hip, and leg[,]" and that instead of providing care, "Defendants" left him "suffering in the holding cell for several days[.]"  [TAC ¶¶ 97–99].  Finally, Plaintiff states that he experienced "severe pain and suffering that could have been mitigated if he had received proper medical care/treatment."  [Id. ¶ 100].  The Court finds that Plaintiff's allegations, some of which merely recite elements of the claim, fail to plead that any individual Defendant (i) was actually aware of a medical need that obviously required medical care, and (ii) consciously or recklessly disregarded it.  Plaintiff has therefore failed to state a constitutional claim for inadequate medical care.  See, e.g., Escobar v. Gerry, No. 12-cv-00167, 2012 WL 5510976, at *4 (D.N.H. Sept. 27, 2012), R. & R. approved sub nom. Escobar v. NH State Prison, Warden, No. 12-cv-00167, 2012 WL 5511608 (D.N.H. Nov. 13, 2012) ("[Plaintiff] has failed to identify any individual defendant to this action, or any facts that would demonstrate that a presently unnamed official failed to respond to his requests for medical care with actual awareness that such a failure would create a substantial risk of serious harm to [Plaintiff].  Accordingly, he has failed to state a claim for inadequate medical care arising out of his one-week stay in [the Secure Housing Unit of the New Hampshire State Prison].").[18]

_____

[18] The SAC alleged that Plaintiff specifically told Defendant Dokos that he required medical care and that Defendant Dokos responded he would "be right back" but did not return.  See [SAC at

Defendants Vicente, Dokos, Rivera, Desmarais and Penrose's motions to dismiss Count 7

are therefore <u>GRANTED</u>.

## IV.   CONCLUSION

Accordingly:

A. Defendants Desmarais and Penrose's motion to dismiss, [ECF No. 108], is <u>GRANTED</u>.

B. Defendant Vicente's motion to dismiss, [ECF No. 99], is <u>GRANTED</u> as to all claims against him in his official capacity.  As to the individual capacity claims, Defendant's motion to dismiss is <u>GRANTED</u>, as to Counts 2, 4, 7, 8, and 9; and <u>DENIED</u>, as to Counts 1 and 3.

C. Defendants Dokos, Rivera, and Lavoie's motion to dismiss, [ECF No. 101], is <u>GRANTED</u>, as to Counts 3, 7, 8, and 9; and <u>DENIED</u>, as to Counts 1, 2, and 4.

D. In summary, all of Plaintiff's official-capacity claims and claims against Defendants Rivera, Desmarais, and Penrose are <u>DISMISSED</u>.  As to Plaintiff's individual-capacity claims against the remaining Defendants, Count 2 against Defendant Vicente, Count 3 against Defendant Dokos and Lavoie, Count 4 against Defendant Vicente; and Count 7, Count 8, and Count 9 against all remaining Defendants, are also <u>DISMISSED</u>.

E. Plaintiff's remaining claims, all against Defendants in their individual capacities, are:

- Count 1, against Defendants Vicente, Dokos, and Lavoie;
- Count 2, against Defendants Dokos and Lavoie;
- Count 3, against Defendant Vicente; and
- Count 4, against Defendants Dokos and Lavoie.

**SO ORDERED.**

March 31, 2023                                     /s/ Allison D. Burroughs
                                                            ALLISON D. BURROUGHS
                                                            U.S. DISTRICT JUDGE

---

18].  The SAC also included more details on Plaintiff's injuries.  <u>Id.</u>  The Court finds that even if Plaintiff were granted leave to incorporate these allegations into his operative complaint, he would still fail to sufficiently plead that Defendant Dokos deliberately or recklessly denied care for a medical need "that [wa]s so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  <u>Kosilek</u>, 774 F.3d at 82 (quoting <u>Gaudreault</u>, 923 F.2d at 208).  These allegations therefore do not change the Court's conclusion that this claim must be dismissed against all Defendants.