UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL AARON, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 20-cv-11604-ADB |
| CITY OF LOWELL et al., | * |
| Defendants. | * |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiff Paul Aaron ("Plaintiff" or "Aaron") alleges that Defendants Officer Francisco Vicente ("Defendant" or "Officer Vicente"), several Lowell police officers, and the City of Lowell violated his constitutional and civil rights during his arrest and subsequent prosecution for drug trafficking. [ECF No. 92 ("Third Amended Complaint" or "Third Am. Compl.")]. Pending before the Court is Officer Vicente's motion for summary judgment on Count I (unlawful arrest) and Count III (excessive use of force). [ECF No. 135]. For the reasons set forth below, the motion is GRANTED.

I.      BACKGROUND

      A.      Factual Background

Except as otherwise noted, the following facts are either not in dispute or stated in the light most favorable to Aaron, the non-movant.  See Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003).[1]

      1.      The "Doe" Drug Investigation

Sometime before March 7, 2018, Officer Vicente, a New Hampshire State Trooper, was deputized by the U.S. Drug Enforcement Administration ("DEA") to work on a federal task force (the "DEA task force") investigating drug distribution in Massachusetts and New Hampshire. [SOF ¶ 1].

As part of this work, Officer Vicente "tracked the car and communications of a known drug supplier," referred to as "Doe."  [SOF ¶ 2].  On two separate occasions in February 2018, Officer Vicente followed Doe to Lowell, Massachusetts, where he saw Doe "interact with a man wearing glasses," who was later identified as Aaron, [id. ¶¶ 4–5],[2] each time engaging in "what

---

[1] The Court draws the facts from the parties' combined Rule 56.1 statement of material facts, which is Aaron's Response to Officer Vicente's Statement of Undisputed Material Facts, [ECF No. 144 ("SOF")], and documents referenced therein.  The Court refers to each "Statement" and "Response" as a combined paragraph number.

The portions of Officer Vicente's Statements of the Facts, not specifically controverted by Aaron, with support in the record, are deemed admitted.  See Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007) ("In the event that a party opposing summary judgment fails to act in accordance with the rigors that [a local rule governing summary judgment] imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated.").

[2] Based on the record, it appears that Officer Vicente did not know Aaron's identity until after the arrest on March 7, 2018.  See [ECF No. 137-1 at 3 ("Vicente observed a black male fitting the same description as the source who supplied [Doe], later identified as being Aaron.")].

2

appeared to be [] drug transactions." [ECF No. 137-3 at 6:22–23]. One time, for example, Aaron entered Doe's vehicle, and they "looped the block, which is typical drug trafficking." [Id. at 8:21–22]. The other time, Officer Vicente saw Aaron enter Doe's vehicle and exit it "extremely quickly." [Id. at 8:24].

### 2. Arrest on March 7, 2018

In addition to the Doe investigation, Officer Vicente and the DEA task force also conducted an investigation into Sergio Martinez ("Martinez"), a known drug supplier. [SOF ¶ 10; ECF No. 137-3 at 9:15–10:5]. On March 7, 2018, the DEA task force intercepted a phone call between Martinez and "another man [later identified as Aaron] discuss[ing] and plann[ing] a drug transaction for later that evening." [SOF ¶¶ 11–12]. Specifically, the man later identified as Aaron "planned to procure one kilogram of fentanyl from Martinez at a specific location in Lowell."[3] [Id. ¶ 13]. Officer Vicente then travelled to Lowell to surveil the planned drug transaction. [Id. ¶ 14].

When Officer Vicente and other officers from the Lowell Police Department arrived in Lowell that evening, it was "dark and snowing heavily." [SOF ¶ 15]. "After setting up his position, Officer Vicente observed a man," noting his glasses and a fluorescent yellow jacket, and drove to get closer. [Id. ¶ 16; ECF No. 137-3 at 15:5–16:4; 16:20–23; 18:5–8]. Officer Vicente observed the man approaching a taxi, "lean[ing] into the passenger side of the [taxi] and

---

[3] It is unclear when the DEA task force identified Aaron as the man speaking with Martinez. [SOF ¶ 12 ("The DEA task force later identified the man speaking with Martinez on this phone call as Aaron."); ECF No. 137-3 at 12:3–7 (Officer Vicente testifying that he "received a phone call from a DEA agent who advised [him] they had intercepted a telephonic communication between who we believe was Mr. Paul Aaron and Sergio Martinez where Paul Aaron requested a kilo of fentanyl.")].

then proceed[ing] to walk back towards [the direction from which he came] with a bag in his hand." [ECF No. 137-1 at 3; ECF No. 137-3 at 20:3–19; SOF ¶¶ 20, 24]. Officer Vicente "had expected Martinez to arrive in a taxi because Martinez owned a taxicab company, and other investigators with the task force had seen Martinez conduct drug transactions from a taxi before." [SOF ¶ 18; ECF No. 137-3 at 15:5–8].

After the taxi interaction, Aaron began walking towards where Officer Vicente was parked. [SOF ¶ 22]. At that point, Officer Vicente recognized him "as the same man he had seen interact with Doe the previous month." [Id. ¶ 23].[4] Officer Vicente immediately reported his observations to the surveillance team, and the group supervisor directed Officer Vicente to arrest Aaron. [Id. ¶ 26; ECF No. 137-3 at 21:6–23].

Officer Vicente, who was in plain clothing, exited his car as Aaron got close to his vehicle, and seemingly slipped on the snowy street, as he approached Aaron. [SOF ¶¶ 27–28]; see also [Video: U.S. v. Paul Aaron Presentation ("Video Presentation") at 03:09–13].[5] While the parties disagree as to whether Officer Vicente announced himself as police or not,[6] the Video

---

[4] Aaron asserts that Officer Vicente discovered "his identity after tackling/slamming him to the ground," citing to [ECF No. 145-1 at 1–5] and [ECF No. 145-2 at 75] in support of his contention. The relevant exhibits at issue, however, do not support Aaron's response to [SOF ¶ 12], and the Court accordingly disregards the response.

[5] In a motion to suppress hearing in United States v. Paul Aaron, Officer Vicente recounted that he "slipp[ed] on the sidewalk as [he] was announcing police, police, stop." [ECF No. 145-2 at 30]. The Video Presentation indicates that he slipped on the street. [Video Presentation at 03:09–13].

[6] Officer Vicente maintains that he told Aaron, "[p]olice, turn around." [SOF ¶ 30]. Aaron claims that Officer Vicente "never announced police, hands up, or gave any chance of surrender." [Id. ¶ 30]. Given the weather, it is also possible that Officer Vicente did identify himself, but that Aaron didn't hear it.

Presentation shows that Officer Vicente stepped onto the sidewalk by Aaron and placed his hands on Aaron.  [Id. at 3:10–3:18].  In response, Aaron took a few steps backwards and extended his arm towards Officer Vicente's chest.  [Id.].  The Video Presentation indicates that Aaron and Officer Vicente made contact with each other, with the bag falling out of Aaron's hand onto the sidewalk.  [Id.].  Officer Vicente then employed a leg sweep, which caused Aaron to fall on the ground, first on his shoulder and then rolling onto his stomach.[7]  [Id. at 3:10–3:18; ECF No. 137-3 at 25:8–9].  At the same time, other officers arrived at the scene and, together with Officer Vicente, held Aaron against the ground and put him in handcuffs.  [Video Presentation at 3:19–3:24; SOF ¶ 35].  The Video Presentation shows an officer retrieving the bag that had fallen onto the ground earlier.  [Video Presentation at 3:19–3:24].  The bag contained more than one kilogram of fentanyl.  [ECF No. 137-1 at 3].  At the time of his arrest, Aaron was wearing a ballistic vest.  [SOF ¶ 37].

### 3. Criminal Prosecution

The United States Attorney's Office for the District of New Hampshire prosecuted Aaron and Martinez, as well as other individuals, for drug trafficking.  [SOF ¶ 39; see also United States v. Martinez et al., No. 18-cr-00033 (D.N.H.).  Pursuant to a plea agreement, Aaron pled guilty "to an Information charging him with conspiracy to distribute and to possess with the

---

[7] In the SOF, Officer Vicente refrains from using the term "leg sweep" and instead refers to a "swift pulling-and-pushing motion," which brought Aaron to the ground.  [SOF ¶ 34].  Given that Officer Vicente confirms in his deposition that he in fact took Aaron to the ground "[w]ith a leg sweep," the Court, in stating facts most favorable to Plaintiff, uses the term "leg sweep."  See [ECF No. 137-3 at 25:8–15].

intent to distribute a controlled substance,"[8] and he was subsequently sentenced to sixty-months of incarceration, which he has now completed. [ECF No. 137-2 at 2, 7; SOF ¶¶ 48–49].

On October 9, 2018, in a motion to suppress hearing prior to the plea, Officer Vicente stated that he had not observed Aaron carrying a bag prior to his interaction with the taxi driver. [SOF ¶¶ 40–41; ECF No. 145-2 at 27:11–13]. Aaron's counsel then presented security camera footage showing that Aaron was already carrying a bag before he approached the taxi. [SOF ¶ 42]. A federal-state investigation as to Officer Vicente's truthfulness followed, [id. ¶ 43], which ultimately concluded that Officer Vicente had not testified falsely when he said that he did not see Aaron carrying a bag before the taxi interaction. [Id. ¶¶ 44–45].[9]

### B. Procedural History

On June 30, 2022, Aaron filed the operative complaint, his Third Amended Complaint, in which he alleged several counts against Officer Vicente, including unlawful arrest (Count I),

---

[8] Although Aaron claims that he "did not plead guilty to possession with intent to distribute," the Plea Agreement, which he cites to, provides that he was to plead guilty to this offense and the Judgment reflects that he was convicted on this offense. [SOF ¶ 45]; see also [ECF No. 137-2 at 2]; United States v. Martinez et al., No. 18-cr-00033, Judgment, ECF No. 676.

[9] Although Aaron does not dispute [SOF ¶¶ 44–45], with regards to Officer Vicente's alleged untruthfulness, he "asserts that it was more than just this one fact [i.e. whether he carried a bag prior to the taxi encounter], including but not limited to the search warrant affidavit, the Lowell Police Department's police report, and Defendant Vicente asserting the takedown was the result of 'slipping on the ice.'" [Id. ¶ 43]. In support, Aaron cites to two pages of Officer Vicente's testimony during the motion to suppress hearing, which do not, in fact, support his assertion. [ECF No. 145-2 at 54–55]. Accordingly, the Court disregards them.

Separately, to the extent Plaintiff seeks to impugn Officer Vicente's credibility by referring to the Board of Inquiry investigation and his decision not to testify before the Board, [SOF ¶ 44], neither Officer Vicente's credibility nor the Board's findings are relevant for the purposes of the present motion.

unlawful search and seizure (Count II), excessive use of force during his arrest (Count III), malicious prosecution (Count IV), and tort violations under state law (Counts VII, VIII, and IX). [ECF No. 92]. Officer Vicente filed a motion to dismiss on August 9, 2022, [ECF No. 99], which Aaron opposed on August 26, 2022, [ECF No. 105]. Except for Counts I and III, the counts at issue here, the Court granted Officer Vicente's motion to dismiss. [ECF No. 114].

## II.   LEGAL STANDARD

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (alteration in original) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)), aff'd, 706 F.3d 25 (1st Cir. 2013). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran, 328 F.3d at 6 (citation omitted). Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted). By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States v. Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I., 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must "'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file ... demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124, 132

(1st Cir. 2000)).  Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002) (internal quotation marks and citation omitted).  That is, the nonmoving party must set forth specific, material evidence showing that there is "a genuine disagreement as to some material fact." Plat 20, Lot 17, Great Harbor Neck, 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted).  The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  "The factual conflicts upon which he relies must be both genuine and material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012) (citation omitted), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation[,]" Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

### III. DISCUSSION

#### A. Count I: Unlawful Arrest

Officer Vicente contends that he is entitled to summary judgment on Count I because he had probable cause to arrest Aaron.  [ECF No. 136 at 6–10].  Specifically, Officer Vicente argues that (1) prior to Aaron's arrest on March 7, 2018, he had "observed Aaron interact with a known drug supplier in Lowell [on two separate occasions] [], in a matter consistent with engaging in a drug transaction[,]" [id. at 8]; (2) as part of an investigation of Martinez, another known drug

supplier, Officer Vicente and the DEA task force had intercepted a phone call in which Aaron discussed procuring drugs from Martinez at a specific street in Lowell on March 7, [id.]; (3) then, on the evening of March 7, he directly observed the interaction between Aaron and Martinez, [id.]; and (4) he saw "Aaron lean through the passenger-side window of the taxi, and then walk away with a bag in his hand," [id.]. Aaron, in response, seeks to put Officer Vicente's credibility into question by pointing out the discrepancy between the motion to suppress hearing testimony that Aaron was not carrying a bag before he interacted with the taxi driver and the security camera footage which showed Aaron carrying the bag prior to approaching the cab. [ECF No. 143 at 5–6].

"The constitutionality of a warrantless arrest 'depends ... upon whether, at the moment the arrest was made, the officer ... had probable cause to make it.'" Logue v. Dore, 103 F.3d 1040, 1044 (1st Cir. 1997) (alterations in original) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). "Probable cause for an arrest exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators." Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004) (first citing Beck, 379 U.S. at 91; and then citing United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987)). "To determine whether an officer had probable cause to make an arrest, [a court must] examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citation and internal quotation marks omitted).

Viewing the "events leading up to [Aaron's] arrest" from "the standpoint of an objectively reasonable police officer," Pringle, 540 U.S. at 371, the Court is satisfied that there is

9

no genuine dispute of material fact as to whether Officer Vicente had probable cause to arrest Aaron.  First, Officer Vicente acted upon information from an intercepted phone call between Martinez and another person, indicating that one kilogram of fentanyl would change hands at a specific location in Lowell.  [ECF No. 144 ¶ 13; ECF No. 137-3 at 12:3–16; 15:17–16:4].  Positioning himself in that area, Officer Vicente believed that Martinez was likely to arrive in a taxi, as "other investigators with the task force had seen Martinez conduct drug transactions from a taxi before."  [SOF ¶ 18; ECF No. 137-3 at 15:5–8].  Thus, when he saw a man approach a taxi, "lean[] into the passenger side," and then walk back "with a bag in his hand," [ECF No. 137-1 at 3; ECF No. 137-3 at 20:3–19; SOF ¶¶ 20, 24], Officer Vicente "reasonably conclude[d] that a crime ha[d] been . . . committed and that [Aaron] likely [was] one of the perpetrators."  Acosta, 386 F.3d at 9.  Second, as Aaron approached Officer Vicente's parked car, Officer Vicente recognized him as having been involved in two other interactions that "appeared to be [] drug transactions," [137-3 at 6:22–23; 8:17-24], which provided further support for his determination that he had probable cause to believe that Aaron had just been involved in a drug transaction.  See United States v. Gomez, 716 F.3d 1, 9 (1st Cir. 2013) (finding probable cause to arrest defendant because agents had intercepted phone communication indicating the location of the drug transaction and observed defendant in that location).  Accordingly, summary judgment is proper on the issue of Count I.[10]

---

[10] Because the Court has determined that there is no genuine dispute as to whether Officer Vicente had probable cause, it need "not reach the qualified immunity [] contention[]." Karamanoglu v. Town of Yarmouth, 15 F.4th 82, 91 (1st Cir. 2021).  Nonetheless, the Court notes that even if its probable cause "conclusion was debatable . . . qualified immunity would attach and [Aaron's] claim would still fail." French v. Merrill, 15 F.4th 116, 125–26 (1st Cir. 2021) ("As the district court explained, it is well established that 'in the case of a warrantless

B.      Count III: Excessive Use of Force

In response to Aaron's claim that Officer Vicente used excessive force during his arrest, Officer Vicente contends that his actions were justified "based on the totality of circumstances." [ECF No 136 at 13]. Officer Vicente maintains that in "grabb[ing] control of Aaron's body and forc[ing] him down onto the sidewalk," he "employed a reasonable amount of force," given that he had just "observed Aaron engage in a serious and inherently dangerous felony." [Id. at 14]. He further argues that he was alone when he approached Aaron and that Aaron initially resisted the arrest, making contact with Officer Vicente's chest with his hand. [Id. at 14–15]. According to Officer Vicente, he made "a split-second judgment about how to single-handedly arrest a non-compliant individual," and in so doing used a reasonable amount of force given the circumstances. [Id. at 15]. Aaron counters that Officer Vicente not only "tackled and slammed [] [him] into the ground," but also lied about it when he said that "[they had] slipped on ice." [ECF No. 143 at 6]. Aaron further avers that Officer Vicente's honesty is further impugned by the fact that he was not even willing to admit to the leg sweep until after his counsel presented the security footage at the suppression hearing. [Id. at 6–7].[11]

Under the Fourth Amendment, "an excessive use of force claim will succeed if it can be shown that a defendant 'employed force that was unreasonable under all the circumstances.'" Eck v. Neal, No. 14-cv-13693, 2017 WL 4364171, at *3 (D. Mass. Sept. 29, 2017) (quoting Morelli v. Webster, 552 F.3d 12, 23 (1st Cir. 2009) (citing Graham v. Connor, 490 U.S. 386, 396

---

arrest if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach.'" (quoting Cox v. Hainey, 391 F.3d 25, 31 (1st Cir. 2004))).

[11] The Court notes that the transcript of the motion to suppress hearing cited to by Aaron in support of his argument, [ECF No 145-2 at 25], does not support this proposition.

(1989))). This standard requires an inquiry into the circumstances of the particular case to determine if a reasonable officer would have thought the level of force was reasonable under the circumstances, which includes: "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of officers or others, and whether [the suspect] [was] actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396 (citation omitted). It has long been recognized that police officers have a right to use some degree of physical coercion or threat of such coercion to make an arrest. See id.; Terry v. Ohio, 392 U.S. 1, 22–27 (1968). Courts apply an objective reasonableness standard in determining whether force was unconstitutionally excessive in recognition of the fact that "police officers are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396–97.

The Court concludes that whether the amount of force used was reasonable turns on findings of fact that must be made by a jury. On the one hand, a jury could find that Officer Vicente used a reasonable amount of force under the totality of the circumstances. Officer Vicente had just witnessed Aaron engage in what he reasonably assumed was a serious crime, [ECF No. 136 at 14], he was alone because other police officers had not yet arrived, [id.], and Aaron made contact with Officer Vicente in a way in which Officer Vicente could have perceived as "actively resisting arrest," warranting some degree of physical coercion, in this case a leg sweep, to effect the arrest. [Video Presentation at 3:10–3:13].

On the other hand, a jury could alternatively reasonably conclude that Aaron was not actively resisting arrest but instead merely reacted in surprise to a plainly clothed Officer Vicente, [SOF ¶ 27], who Aaron claims did not announce himself as law enforcement police, [id. ¶ 30], approaching him; further, Aaron arguably did not pose a flight risk given that he was

12

positioned between Officer Vicente and a building wall. [Video Presentation at 3:10-3:15]; see also [ECF No. 137-3 at 24:21–22 ("I [Officer Vicente] didn't allow him enough time to attempt to flee.")]. Under these circumstances, a jury could determine that Officer Vicente's use of force was excessive. In sum, "the Graham factors point in conflicting directions . . . mak[ing] out a jury question as to whether [Officer Vicente] used excessive force." Gray v. Cummings, 917 F.3d 1, 9 (1st Cir. 2019).

Nonetheless, this "conclusion does not end [the Court's] query," as Officer Vicente "has invoked the defense of qualified immunity." Gray, 917 F.3d at 9; [ECF No. 136 at 15–17]. Qualified immunity protects public officials, in their individual capacity, "if their actions 'd[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Ciolino v. Gikas, 861 F.3d 296, 302 (1st Cir. 2017) (quoting White v. Pauly, 580 U.S. 73, 78–79 (2017)). The qualified immunity doctrine balances two interests: (1) "the need to hold public officials accountable when they exercise power irresponsibly" and (2) "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). It protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

In determining whether a government official is entitled to qualified immunity, courts must consider (1) whether the facts alleged or shown by plaintiff constitute a violation of plaintiff's constitutional rights, and (2) whether that constitutional right was clearly established at the time of the alleged violation. Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (citing Pearson, 555 U.S. at 232). Determining whether a right is "clearly established" is also a two-party inquiry. Id. "The first sub-part requires the plaintiff to identify either 'controlling

authority' or a 'consensus of cases of persuasive authority' sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm." Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017) (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)) (further citation omitted). "The second sub-part [requires a plaintiff to show that] an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law." Id. (citing Wilson v. City of Boston, 421 F.3d 45, 57–58 (1st Cir. 2005)). "This latter requirement provides 'breathing room' to officers -- who are often called on to respond to dangerous, rapidly evolving situations -- by affording them immunity even when they make reasonable mistakes about the lawfulness of their conduct." Est. of Rahim by Rahim v. Doe, 51 F.4th 402, 410 (1st Cir. 2022) (quoting Conlogue v. Hamilton, 906 F.3d 150, 155 (1st Cir. 2018)). Accordingly, "[a] plaintiff's burden to demonstrate that the law was clearly established is thus 'a heavy burden indeed.'" Id. (quoting Lachance v. Town of Charlton, 990 F.3d 14, 21 (1st Cir. 2021)). Courts may address the qualified immunity question in any order. See Pearson, 555 U.S. at 236.

Officer Vicente contends that he is entitled to qualified immunity because no "precedent put him on notice that his specific conduct [that is, employing a leg sweep against an individual who made body contact with him by extending his arm] was unlawful." [ECF No. 136 at 15 (emphasis in the original)]. Although the clearly established law prong analysis must "be undertaken in light of the specific context of the case," Lynch, 847 F.3d at 76 (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam) (citation omitted)), a "case 'directly on point' is not required," Est. of Rahim, 51 F.4th at 413 (quoting Kisela v. Hughes, 584 U.S. 100, 104 (2018) (per curiam) (quoting White v. Pauly, 580 U.S. 73, 79 (2017) (per curiam))). "[I]t is enough if the existing precedents establish the applicable legal rule with sufficient clarity and

14

specificity to put the official on notice that his contemplated course of conduct will violate that rule.'" Lynch, 847 F.3d at 76 (citing Matalon v. Hynnes, 806 F.3d 627, 633 (1st Cir. 2015)) (emphasis added); City of Tahlequah, Oklahoma v. Bond, 595 U.S. 9, 12–13 (2021) (noting that "'such specificity is especially important in the Fourth Amendment context,' where it is 'sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015) (per curiam) (internal quotation marks omitted))).

Here, Aaron does not direct the Court to any case law indicating that Officer Vicente's conduct was objectively unreasonable. See generally [ECF No. 143]. This alone is fatal to Aaron's qualified immunity argument. See Est. of Rahim, 51 F.4th at 410–13 (citing Rivera-Corraliza v. Morales, 794 F.3d 208, 214–15 (1st Cir. 2015) (concluding that plaintiffs did not satisfy their burden under the second prong because they failed to identify any relevant authority)) (noting that plaintiff "has not come close to meeting its burden of identifying controlling authority or a consensus of persuasive authority. . . . and did not advance any argument on this point.").

Additionally, Aaron, by merely seeking to cast doubt upon Officer Vicente's credibility, see [ECF No. 143 at 6–7], does not convincingly show how a reasonable officer in Officer Vicente's position "would have understood [his] actions to violate the law." Est. of Rahim, 51 F.4th at 413. Based on the undisputed facts, the Court finds that a reasonable officer could have believed that Officer Vicente's use of force was reasonable under the circumstances. Officer Vicente had just observed Aaron engage in what he assumed was a serious crime, [ECF No. 136 at 14], he was initially alone when facing Aaron, [id.], and Aaron made contact with him by extending his arm, which could have been perceived as resisting arrest or a prelude to violence.

[12] See supra; see also Graham, 490 U.S. at 396; Justiniano, 986 F.3d at 28–29 (holding that an officer was entitled to qualified immunity because the record did "not support a finding that a reasonable officer would have clearly understood [defendant's] conduct to be an unreasonable violation of [plaintiff's] rights."); Gray, 917 F.3d at 12 (finding that an objectively reasonable police officer could have concluded that the conduct in question did not violate the Fourth Amendment and that "even if such a conclusion was constitutionally mistaken—as a jury could find on the facts of [the] case—[the officer] [was] shielded by qualified immunity."). The Court therefore concludes that Aaron did not meet his heavy burden, and, accordingly, that Officer Vicente is entitled to qualified immunity for the conduct challenged in Count III.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment, [ECF No. 135], is GRANTED on both Counts.

**SO ORDERED.**

August 5, 2024                                         /s/ Allison D. Burroughs
                                                      ALLISON D. BURROUGHS
                                                      U.S. DISTRICT JUDGE

---

[12] As noted by the First Circuit, there is an "inherent tension" between summary judgment, which requires deference to the nonmovant's factual recitation, and qualified immunity, which "demands deference to the reasonable, if mistaken, actions of the movant." Morelli, 552 F.3d at 18–19. The Court seeks to resolve this tension "by framing the factual events to summary judgment's traditional leeway to the nonmoving party's version of events, and then asking, whether, given that story, 'a reasonable officer should have known that his actions were unlawful.'" Justiniano v. Walker, 986 F.3d 11, 27 (1st Cir. 2021) (quoting Morelli, 552 F.3d at 19).